573 So.2d 303 (1990)
Roy Allen HARICH, Appellant,
v.
STATE of Florida, Appellee.
No. 74620.
Supreme Court of Florida.
December 13, 1990.
Rehearing Denied February 11, 1991.
Larry Helm Spalding, Capital Collateral Representative and Billy H. Nolas, Chief Asst. CCR, Office of Capital Collateral Representative, Tallahassee, and Allan M. Pepper, Steven Glickstein, John D. Chapman, Stanley N. Alpert and Suzanne M. Jaffe of Kaye, Scholer, Fierman, Hays & Handler, New York City, for appellant.
Robert A. Butterworth, Atty. Gen. and Margene A. Roper, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Roy Allen Harich appeals the trial court's order denying postconviction relief, which was entered after an evidentiary hearing on Harich's claim that his trial counsel's appointment as a special deputy sheriff resulted in his providing Harich ineffective assistance at his trial. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we affirm.
Harich was found guilty of first-degree murder, attempted first-degree murder, use of a firearm in the commission of a felony, and two counts of kidnapping. The trial court imposed the death penalty, and this Court affirmed the conviction and death sentence in Harich v. State, 437 So.2d 1082 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984). Harich subsequently filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, and the trial court denied relief. He appealed and also petitioned this Court for a writ of habeas corpus. We affirmed the trial court in *304 Harich v. State, 484 So.2d 1239 (Fla. 1986), and denied Harich's petition for a writ of habeas corpus in Harich v. Wainwright, 484 So.2d 1237 (Fla.), cert. denied, 476 U.S. 1178, 106 S.Ct. 2908, 90 L.Ed.2d 993 (1986). Harich then sought relief in the federal courts, which eventually denied habeas corpus relief. Harich v. Dugger, 844 F.2d 1464 (11th Cir.1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1355, 103 L.Ed.2d 822 (1989). In March, 1989, after the governor had signed a death warrant, Harich filed a second motion for rule 3.850 relief, which included a claim of conflict of interest based upon Harich's trial counsel's failure to reveal that he was a special deputy sheriff in an adjacent county at the time that he represented Harich. The trial court denied all relief without an evidentiary hearing. On appeal, we found that the allegations concerning trial counsel's alleged service as a special deputy sheriff were sufficient to require an evidentiary hearing. We remanded solely for a hearing on that issue, and we denied relief on all other claims. Harich v. State, 542 So.2d 980 (Fla. 1989).
In the hearing on remand, Harich was afforded an opportunity to present evidence concerning his claim that he was denied his right to effective assistance of counsel because his counsel, who was the senior public defender in charge of capital cases in the Seventh Judicial Circuit, owed conflicting duties because of his status as a special deputy sheriff in an adjacent county. The trial court, after an extensive evidentiary hearing, made the following findings of fact and conclusions of law:
In June of 1972 Howard Pearl became an assistant public defender for the Seventh Judicial Circuit. In 1978 he assumed responsibility for the defense of capital cases assigned to the public defender's office. In 1982 he represented the defendant Roy Allen Harich at the trial in this cause. He also represented Harich at the governor's clemency hearing. Pearl did not disclose his role as a special deputy to Harich.
... .
Pearl became a special deputy sheriff for Marion County in 1970. This status continued until Pearl resigned in May of 1989. Pearl paid liability insurance each year and he was bonded. He was issued a deputy's card, and the card erroneously identified him as a regular deputy. He also took an oath of office. Pearl also purchased a deputy sheriff's badge from a gun shop.
Pearl's sole reason for becoming a special deputy was to permit him to carry a firearm. He wanted a "gun toter's permit." Pearl never intended to act as a deputy, and the sheriff of Marion County never intended for Pearl to act as a law enforcement officer. Specifically, Pearl:
1. was never certified as a Florida law enforcement officer, contrary to the allegations on Page Nine of the 3.850;
2. never held himself out as a regular deputy;
3. received no training as a deputy, contrary to the allegations on Page Ten of the 3.850;
4. never wore a deputy's uniform;
5. received no compensation as a deputy, contrary to the allegations on Page Ten of the 3.850;
6. was never issued any equipment;
7. never made an arrest or stop;
8. had no required duties as a deputy; was on no duty roster;
9. never acted as a regular deputy;
10. was never asked to act as a regular deputy;
11. was in fact a "special" or "honorary" deputy rather than a regular deputy.
... .
In March of 1974 he was issued an honorary deputy's card by former Sheriff Duff. He performed no duties as a Volusia County deputy, and none were expected to be performed by him. The card was issued by the sheriff for good will and/or political purposes. It was issued to dignitaries like television personality Willard Scott, and was even issued by the sheriff to newborn babies. This card was solely honorary.
The Lake County card was issued by the former sheriff to Pearl in June of *305 1983. Much like the Volusia County card it was purely honorary. Pearl never acted as a Lake county deputy, never held himself out to be a Lake County deputy, and was never expected by the sheriff to act as a regular deputy.
... .
The Defense 3.850 alleges that Pearl's role as a deputy sheriff caused him to render ineffective assistance of counsel to Harich. No evidence to support this contention was produced at the evidentiary hearing. In fact, the evidence was to the contrary. Pearl remained loyal to Harich. He betrayed no confidences to law enforcement. He effectively crossed-examined [sic] law enforcement officers. He did not ineffectively bolster their credibility. He did not ineffectively concede that a sexual battery took place. Pearl's role as a special deputy sheriff resulted in no prejudice to Harich. The deputy sheriff status did not in any way interfere with Pearl's role as a public defender.
... .
The majority opinion in the Supreme Court decision mandating this evidentiary hearing expressed concern that the issue of Pearl's deputy status may not have been discoverable through due diligence. During the evidentiary hearing it became obvious the issue could have been easily discovered. Judge Blount knew Pearl was an honorary deputy. In fact, Pearl told many judges about his status. He never tried to keep the status secret. It was never anything he perceived to be a conflict. In addition to the judges the original prosecutor knew Pearl was a deputy; Pearl's employer, the Public Defender of the Seventh Judicial Circuit, knew; other members of Pearl's office knew, including the head of the capital appeals division. It was common knowledge in the Volusia County legal system. This issue could have easily been discovered back at the time of the 1982 trial or anytime thereafter.
... .
No actual conflict between Pearl's status as a special deputy sheriff and Harich's defense counsel has been demonstrated. Harich suffered no prejudice from Pearl's deputy status. Pearl rendered effective assistance to the defendant, the deputy status notwithstanding.
The remaining question is whether Pearl's deputy status was a per se conflict of interest requiring no showing of prejudice to the defendant. There is no law to support this assumption and this Court is unwilling to make that quantum leap. The better view is that Pearl's honorary position, requiring no actual law enforcement duties, did not conflict with his role as a defense attorney. There is no actual, implied, or per se conflict. The Court finds no violation of Florida Statute 454.18, 27, 51, and 27.53; Article II, Section 5(a) of the Florida Constitution; or Disciplinary Rule 5-101A of the Florida Code of Professional Responsibility.
Finally, this Court respectfully concludes that the defendant should be procedurally defaulted. The deputy status issue could and should have been discovered and raised in the original 3.850.
In this appeal, Harich claims that his public defender's undisclosed special deputy position amounted to a violation of his rights under the sixth and eighth amendments to the United States Constitution and his rights under article II, section 5(a), and article I, section 16, of the Florida Constitution. Harich also argues that the public defender violated section 454.18, Florida Statutes (1981), the common law doctrine of incompatibility, and several of this Court's disciplinary rules. He asserts that the mere fact of his counsel's position as a special deputy sheriff in an adjacent jurisdiction constitutes an actual conflict, that prejudice is presumed, and that this conflict is a per se violation of the cited constitutional provisions. Harich further claims that, even if the per se rule does not apply, the public defender's position was a conflict of interest that actually affected his performance at the trial, resulting in Harich's entitlement to relief.
We approve the findings of fact made by the trial judge and find that they are fully supported by this record. Considering the duties and status of a special deputy sheriff, as found by the trial judge, we conclude *306 that the public defender did not violate the duty he owed to Harich and that the public defender's special deputy status, under the circumstances present in this case, did not result in a per se conflict of interest. We agree with the trial judge that defense counsel's special deputy status was very different from that of an active or auxiliary deputy sheriff and that his position could best be characterized as "honorary." We find none of the cases cited by Harich to be applicable to the facts of this case. Further, we find no actual conflict or deficiency in this public defender's representation of Harich. Interestingly, the United States Court of Appeals for the Eleventh Circuit, in reviewing this public defender's representation of Harich in the trial of this cause, stated: "Indeed, we think that the lawyer was above average if not outstanding in representing his client in this case." Harich v. Dugger, 844 F.2d 1464, 1471 n. 6 (11th Cir.1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1355, 103 L.Ed.2d 822 (1989).
We also must address the collateral issue of collateral relief counsel's being found in contempt of the court by the trial judge initially assigned to try this cause. The finding of contempt was announced immediately before the judge recused himself from hearing this cause on remand. The record reflects that counsel was found in contempt for being late to the evidentiary hearing and for perceived dilatory conduct. We find it unnecessary to fully articulate the circumstances, but we conclude that, in light of this record, we should vacate the order of contempt. In doing so, we do not condone collateral counsel's conduct.
Accordingly, we affirm the trial court's denial of rule 3.850 relief, vacate the stay of execution previously entered in this proceeding, and vacate the contempt order entered against collateral relief counsel.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, EHRLICH, BARKETT, GRIMES and KOGAN, JJ., concur.