630 So.2d 513 (1993)
Jerry Lane ROGERS, Appellant,
v.
STATE of Florida, Appellee.
No. 78349.
Supreme Court of Florida.
July 1, 1993.
Rehearing Denied February 8, 1994.
Larry Helm Spalding, Capital Collateral Representative, Martin J. McClain, Chief Asst. CCR and Kenneth D. Driggs, Asst. CCR, Office of Capital Collateral Representative, Tallahassee, for appellant.
*514 Robert A. Butterworth, Atty. Gen. and Barbara C. Davis, Asst. Atty. Gen., Daytona Beach, for appellee.
SHAW, Justice.
Rogers appeals the denial of his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We reverse.
The facts are set out fully in our opinion on direct appeal. See Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). Rogers and an accomplice, Thomas McDermid, attempted to rob a Winn-Dixie supermarket and while escaping shot the store manager three times at close range, killing him. Rogers was convicted of first-degree murder and consistent with the jury's unanimous recommendation was sentenced to death based on five aggravating[1] and no mitigating circumstances. This Court affirmed on direct appeal, after striking three aggravating circumstances.[2] The trial court denied Rogers' motion for postconviction relief following an evidentiary hearing, and Rogers appeals, raising sixteen issues and numerous subissues.[3] We address a single issue.
Rogers claims that the court on collateral review erred in failing to grant his motion that the judge recuse himself. (The motion and accompanying dialogue are appended to this opinion.) Four days into the evidentiary hearing on collateral review, near the completion of trial counsel Tumin's testimony, defense counsel asked Tumin if he had had a conversation with the presiding judge that morning and if Tumin had then told Jeff Walsh, an investigator, that "the Court indicated to you it [had already] arrived at a decision in this matter." Trial counsel Tumin conceded having had a conversation with the judge, but denied telling anyone that the judge had said he had made up his mind. The judge then interceded from the bench and offered his own version of events  he strongly denied having had a discussion with Tumin and denied telling him that he had already made up his mind  and called a ten minute recess.
Following recess, defense counsel entered an oral motion for recusal, against which the judge argued strenuously and at length. When defense counsel asked to call a supporting witness, the judge continued to protest heatedly and commented, "Now, what is it that you want to testify about? Do you want to create perjured testimony here?" After investigator Walsh testified confirming defense counsel's version of events, the judge himself questioned the investigator and suggested that the bailiff be called to support his (the judge's) version. In response to defense counsel's plea that the judge not inquire further into the "provability" of the charge of bias, the judge pressed on, indicating that further fact-finding was necessary. Pursuant to the judge's request, the State then called and questioned the bailiff, who supported the judge's position. The judge then *515 criticized defense counsel for making its motion lightly and denied the motion.
Although the right to seek disqualification of a presiding judge is substantive in nature, the process governing disqualification is procedural and controlled by Florida Rule of Criminal Procedure 3.230,[4] which provides in part:
(a) Grounds for Disqualification. The state or the defendant may move to disqualify the judge assigned to try the cause on the grounds that the judge is prejudiced against the movant or in favor of the adverse party... .
(b) Motion to Be in Writing. Every motion to disqualify shall be in writing and be accompanied by 2 or more affidavits setting forth facts relied on to show the grounds for disqualification and a certificate of counsel of record that the motion is made in good faith.
... .
(d) Determination of Legal Sufficiency. The judge presiding shall examine the motion and supporting affidavits to disqualify the judge for prejudice to determine their legal sufficiency only, but shall not pass on the truth of the facts alleged nor adjudicate the question of disqualification. If the motion and affidavits are legally sufficient, the presiding judge shall enter an order disqualifying himself or herself and proceed no further therein.
The requirements set forth in the rule were established "to ensure public confidence in the integrity of the judicial system as well as to prevent the disqualification process from being abused for the purposes of judge-shopping, delay, or some other reason not related to providing for the fairness and impartiality of the proceeding." Livingston v. State, 441 So.2d 1083, 1086 (Fla. 1983). The inquiry focuses on the reasonableness of the defendant's belief that he or she will not receive a fair hearing:
[A] party seeking to disqualify a judge need only show a well grounded fear that he [or she] will not receive a fair trial at the hands of the judge. It is not a question of how the judge feels; it is a question of what feeling resides in the affiant's mind and the basis for such feeling. The question of disqualification focuses on those matters from which a litigant may reasonably question a judge's impartiality rather than the judge's perception of his ability to act fairly and impartially.
Id. at 1086 (quotation marks and citations omitted). As to the sufficiency of the allegations:
Facts alleged in the motion need only show that the party making it has a well grounded fear that he will not receive a fair trial at the hands of the judge. If the attested facts supporting the suggestion are reasonably sufficient to create such a fear, it is not for the trial judge to say that it is not there.
Id. at 1087 (quotation marks and citations omitted). The ultimate inquiry is "whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial." Id. This determination must be based solely on the alleged facts  the presiding judge "shall not pass on the truth of the facts alleged nor adjudicate the question of disqualification." Fla.R.Crim.P. 3.230(d).
This Court reversed an order denying recusal on facts similar to the present in Bundy v. Rudd, 366 So.2d 440 (Fla. 1978). There, we held:
Regardless of whether respondent ruled correctly in denying the motion for disqualification as legally insufficient, our rules clearly provide, and we have repeatedly held, that a judge who is presented with a motion for his disqualification shall not pass on the truth of the facts alleged nor adjudicate the question of disqualification. When a judge has looked beyond the mere legal sufficiency of a suggestion of prejudice and attempted to refute the charges of partiality, he has then *516 exceeded the proper scope of his inquiry and on that basis alone established grounds for his disqualification. Our disqualification rule, which limits the trial judge to a bare determination of legal sufficiency, was expressly designed to prevent what occurred in this case  the creation of an intolerable adversary atmosphere between the trial judge and the litigant.
Id. at 442 (quotation marks and citations omitted).
We conclude that Bundy controls the present case. Once the motion for recusal was made, the present judge, rather than limiting inquiry to a determination of the motion's legal sufficiency, actively participated in, and directed the outcome of, a mini-hearing to determine the truthfulness of the defendant's allegations against him. When defense counsel objected to the judge's fact-finding efforts, the judge insisted that such was his proper role. As a result of the judge's actions, the proceeding degenerated into a heated, contentious melee, with the judge calling and questioning witnesses, and the State and judge uniting against the defendant. Any pretense of judicial impartiality was lost. Regardless of the legal sufficiency of Rogers' motion, we conclude that he is entitled to a new evidentiary hearing before a different judge because the appearance of bias generated during this mini-hearing was so pervasive it tainted the remainder of the proceeding, as happened in Bundy.
"We recognize the difficulty in expecting a judge to sit as silent as a sphinx on the Nile in the face of personal attacks on his impartiality and his integrity. A certain amount of visceral reaction is unavoidable." Nassetta v. Kaplan, 557 So.2d 919, 921 (Fla. 4th DCA 1990). This is particularly true where in-court testimony impugning the judge's impartiality is elicited before the offended party actually makes a motion for recusal, as was the case in the present proceeding. A judge may well be drawn into the fray inadvertently long before he or she is put on notice that a motion for disqualification will be filed. Where the motion itself is oral, rather than written, and live testimony replaces factual allegations contained in affidavits, as was also the case here, the risk of impermissible judicial involvement is heightened dramatically.
Accordingly, we hold that upon filing of this opinion all motions for disqualification of a trial judge must be in writing and otherwise in conformity with this Court's rules of procedure. The writing requirement cannot be waived and a presiding judge must afford a petitioning party a reasonable opportunity to file its motion. Where a party discovers mid-trial or mid-hearing that a motion for disqualification is required, he or she may request a brief recess  which must be granted  in order to prepare the appropriate documents.
Based on the foregoing, we reverse the trial court's denial of postconviction relief and remand for a new evidentiary hearing before a different judge appointed by the chief judge of the circuit.
It is so ordered.
BARKETT, C.J., and KOGAN, J., concur.
HARDING, J., concurs with an opinion.
GRIMES, J., dissents with an opinion, in which OVERTON and McDONALD, JJ., concur.

APPENDIX
At the completion of trial counsel Tumin's testimony four days into the evidentiary hearing on collateral review, the following transpired:
The Court [to Mr. Tumin]: All right. You may step down. Don't discuss your testimony.
Mr. Driggs: Your Honor, at this point, I have no choice but to ask Mr. Tumin a further question. Mr. Tumin, my name is Ken Driggs.
The Court: Okay.
The Witness: Yes, sir.
Mr. Driggs: You have not met me. I am with CCR. Mr. Tumin, did you have a social visit with the Judge this morning before this court began?
The Witness: No, he was busy.
Mr. Driggs: Did you have a conversation with the Judge this morning as to his *517 feelings about the outcome of this proceeding?
The Witness: No.
Mr. Driggs: Did you have a discussion with any individual representing that you had heard such a thing? I remind you that you are under oath.
... .
Mr. Driggs: I'm referring to a conversation in the hall with Jeff Walsh, an investigator for the Capital Collateral Representatives. Did you have a conversation with him before court today concerning the conversation you had with the Court?
The Witness: Yes, I may have. Yes.
Mr. Driggs: Did you tell him that the Court indicated to you it arrived at a decision in this matter?
The Witness: No, not that it arrived at a decision. It was some kind  it's an uphill fight.
Mr. Driggs: What was the nature of that conversation?
The Witness: I don't recall. I said 
Mr. Driggs: Do you recall the gist of what 
The Witness: That, "You have a firm judge, and you have an uphill fight."
Mr. Driggs: Do you recall telling anyone that the Judge made up his mind on any 
The Witness: No. I never had any discussions on that.
Mr. Driggs: Your Honor, at this point 
Mr. Daly: Objection, Your Honor. The questions were asked and answered.
The Court: Objection will be sustained at this point. Mr. Tumin was in the office. He got a cup of coffee, I believe, from our coffee pot.
The Witness: I tried to.
The Court: I ran him out because I was busy doing something. And I resent the implication that this Court would become involved with some conversation with a witness. And since we got to that point, we're going to now exclude everybody from everywhere else if that is the way this thing is going to go.
So, we will have some new ground rules. We will keep everybody separate. There will be no further, you know, Mr. Nice Guy.
This man walked in the office and got a cup of coffee, and it was no discussion with him. I ran him out because I was busy trying to get something else done. I had other hearings, and now you implicate and insinuate that there is some conversation about the results of this case. Now, that is just completely unfair. It is unfair to the witness, it's unfair to the Court, and just creates a complete aura of just  I don't even know how to describe it.
Mr. Driggs: Your Honor, I appreciate this is very unpleasant and uncomfortable and believe, me, it is for me, also, however, I feel we have a right 
The Court: We will have a recess for 10 minutes.
(Whereupon, there was a short recess.)
The Court: Call your next witness.
Mr. Driggs: It might be an appropriate time for me to make my record on my motion. I wish to do this as diplomatically as we can. I know it is uncomfortable for everybody, but we have information that we were presented in good faith. At this time I would make a Motion for Disqualification of Your Honor under Rule 3.230 of the Florida Rules of Criminal Procedure. I can make an oral proffer as to the testimony we anticipate.
The Court: We already heard the testimony, Mr. Driggs. You heard the witness, didn't he testify?
Mr. Driggs: Yes, Your Honor.
The Court: Do you want to ask him some more questions?
The Witness: I would like to clarify something, Your Honor, on what was said.
The Court: Clarify it.
The Witness: A conversation afterwards, and I said  I  first of all to clarify His Honor, I took my own coffee in there. And coming out, I didn't even get  he was busy. I said hello to Marian and left, and the investigator was there. And I said, "We have an uphill fight. I hope  I hope *518 he hasn't made up his mind." And that was all that was said period.
Mr. Driggs: Your Honor, I would be prepared to tender testimony to a different conversation, and I would refer to the Court to two decisions that raise this matter... .
The Court: I don't understand if you heard the testimony of the witness, and the witness did not confer with the Judge, what is the basis for your statement? I mean, you know, you are an officer of the Court.
Mr. Driggs: Yes, Your Honor, I understand.
The Court: And you come in here now in a very sensitive issue, and now you have accused something, and yet the witness has told you what happened. I told you what happened, that I didn't discuss the case with Mr. Tumin. I didn't mention the fact is I ran him out of my office. Now, what more could I have done?
Mr. Driggs: Your Honor, I appreciate your position.
The Court: Now, what is it that you want to testify about? Do you want to create perjured testimony here?
Mr. Driggs: No, Your Honor. It is not perjured testimony. As an officer of the Court, I would never 
The Court: The man has testified. Do you doubt his testimony?
Mr. Driggs: Yes, Your Honor, we do doubt his testimony on this point.
The Court: All right. So, what will you do, put on one of your own people as a witness to try to further exacerbate this situation?
Mr. Driggs: Your Honor, it is not my intention to further exacerbate this.
The Court: Now, you have the testimony of this witness in the record. Based on that testimony, he has told you that we did not discuss the case, I ran him out of my office because I was busy at another hearing, and he was talking to the secretary. Now, does that mean that I had some predisposition to discuss this case with this individual?
Mr. Driggs: No, You Honor, that is not  well, let me retract that comment.
The Court: Now, since that time, just to make the record clear 
Mr. Driggs: Yes.
The Court: Since that time, I have locked the office door. No one will enter in my room. There will be no messages through my office. There will be no conversation. You will repay the secretary the quarter that you borrowed yesterday to buy a newspaper.
Mr. Driggs: I don't recall that I did.
The Court: Well, you did. You're using my office, and now you're trying to twist that around and make some surreptitious situation arise out of nothing.
... .
Mr. Driggs: Your Honor, I am prepared to present testimony of an individual who was on the other side of this conversation with this witness, and I believe that  testimony that I believe is credible, testimony that I believe we must consider.
The Court: Who is the individual?
Mr. Driggs: The individual is Jeff Walsh.
The Court: Who is he?
Mr. Driggs: An investigator with the Public Defender's Office or with the Capital Collateral Representative.
The Court: You mean he's one of your own personnel now?
Mr. Driggs: Yes, Your Honor, he's one of our own personnel, and he takes the requirement of absolute truthfulness under oath very seriously. And Your Honor, on the basis of that testimony, we would move to disqualify this Court under Rule 3.230 of the Florida Rules of Criminal Procedure.
The Court: The Motion to Excuse the Trial Judge has been denied.
Following this dialogue, counsel for the State requested and received permission to question trial counsel Tumin further on the matter, and then called and questioned CCR's investigator, who testified as follows:
The Witness: Yes. Mr. Tumin and the Judge came out of his office right across the hall, and it was directly before this *519 court went into session. Mr. Tumin came over to me and he stated what the Judge had told him.
... .
The Witness: Mr. Tumin stated to me that the Judge said to him, him being Mr. Tumin, that CCR was going to try to introduce Brady material through Mr. Tumin.
Mr. Daly: Mr. Tumin said they're going to try to introduce Brady material?
The Witness: "They are going to try to introduce Brady material through me." He then looked at me and he said, "Your testimony is useless. I have made up my mind on this decision." Mr. Tumin then looked at me and kind of shrugged his shoulders and said, "I guess nothing is going to change."
Mr. Driggs: Just to make it clear, when you say he said this testimony  "Your testimony is not going to make any difference," who is the "he" that Mr. Tumin related?
The Witness: The Judge.
After lengthy questioning by the State, the investigator was questioned by the Judge himself, who then suggested that the bailiff be called as a witness:
The Court: I have one question. Were you aware that Mr. Tumin did not meet with me this morning in any fashion?
The Witness: I saw him exit the office with you, sir.
... .
The Court: You may step down. The Bailiff was in the office, and he probably could verify the fact that we had no meeting, if you would like to call him.
Mr. Daly: I would like to call him. Perhaps Mr. Driggs would like to determine what actually happened.
The Court: Would you be sworn?
Mr. Driggs: Well, I don't think that needs a response.
Mr. Daly: It is their motion. I don't want to put it out of order. I'm sure he wants to determine whether in fact this Judge made such a statement.
Mr. Driggs: Your Honor, I believe under the rule in case law that has interpreted the rule, the focus is not on the provability.
The Court: That is absolutely incorrect in a hearing of this nature that has to do with the commencement of legal proceedings with litigants, and that has nothing to do with the truth of the motion. I know what you're talking about. It has nothing to do in a case like this. I realize CCR may, for some reason  would like to put this off for some reason, which you requested all the way through, and for whatever reason. But as far as the examination of the truth, just say well, I will make a statement, no matter how outlandish it is. It is okay, because I will follow this rule that this Judge should disqualify regardless of looking into the truth of the matter. We're in the middle of a proceeding, a very complex, time-consuming proceeding, so that rule is not applicable to this situation. That has to do with the commencement of legal proceedings, litigants in civil matters, otherwise any defendant in any criminal case could stand up and make some statement, and if it was not requested, that would mean that the Judge would never sit. There would be no judge that could ever sit.
Mr. Daly: Your Honor 
The Court: If you would like to call the Bailiff. I'm not asking the Bailiff. I just didn't meet with Mr. Tumin this morning, and that is why I'm rather shocked at the entire situation. If I had a meeting, I can understand how you might interpret it.
The bailiff was then called and testified that he was present in the judge's office when attorney Tumin walked in:
The Witness: Mr. Tumin walked in shortly after the secretary entered the office and wanted to see the Judge, and he was busy with some things in chambers. And he talked to Marian for a few minutes... .
... .
The Witness: ... Mr. Tumin said he just wanted to pay his respects to the Judge, and the judge had gone into his own private office and was working *520 through some files and he said, "I just want to say good morning to you." And the Judge says, "I'm sorry, I can't talk to you." And with that, Mr. Tumin came out and was looking for a place to discard his coffee cup. I showed him where the wastebasket was, and with that he walked out.
The discussion concerning the motion for recusal concluded with the defense lawyer assuring the judge that he intended no disrespect and the judge indicating that he nevertheless thought the motion had been made lightly:
Mr. Driggs: Your Honor, I want to make it clear I mean no disrespect to the Court. I don't make the motion lightly.
The Court: I think it was made rather lightly because of the fact that it wasn't investigated, it wasn't looked into. There were many people there. There were attorneys in the office. There were hearings, litigants in the office. We conduct our 8:30 to 9:00 o'clock fill-in spouse abuses. We had a spouse abuse. And just to come up off the wall  because this young fellow over here says that he heard something from Mr. Tumin, when Mr. Tumin apparently denied making the statement, and it is an interpretation, well, I have given up trying to figure things out. You can step down. Let's call a witness and let's go ahead.
Mr. Driggs: I take it 
The Court: Your motion is denied for the record under any rule or any citation that you have filed in this case. Go ahead. Let's call another witness. Let's finish up.
Mr. Phillips: Your Honor, the defense calls Robert Fox.
Mr. Daly: Just for the record, the State would note the legal insufficiency of the motion that was presented.
HARDING, Justice, concurring.
I concur with the majority. However, I write separately to emphasize my distaste for the circumstances which bring this case to the Court for review. Whether intentional or not, the defendant's counsel spun a web and ensnared a judge. Defense counsel not only used the unauthorized procedure of an oral motion to recuse, but also employed a back-door approach by seeking to establish the factual grounds for disqualification prior to advising the court of his intent to move for disqualification.
A motion for disqualification strikes at the very core of the judge's role  the ability to be fair. The procedure for questioning a judge's fairness is clearly set out in Florida Rule of Criminal Procedure 3.230. I believe that the procedure was designed to protect the entire judicial system, rather than to protect an individual judge. Thus, the failure of counsel to follow the procedure significantly impacts the integrity of the system.
While defendant's counsel may not have violated a rule of professional conduct, I find his conduct to be less than professional and his tactics objectionable. Even a "Sphinx on the Nile" would find it difficult not to respond as the trial judge did in this case, especially when the truth of the charge was so clearly in doubt even before the charge was made. I also question the State's role in this matter. The State raised no objection to the questions asked of Mr. Tumin that did not relate to his prior testimony or to the issue to be resolved by the court. The State made no objection to the procedure used by defense counsel. In fact, the State only mentioned the legal sufficiency of the motion as an afterthought to the trial judge's ruling. This inaction placed the judge in the role of advocate, fending off the charges by defense counsel rather than ruling on an objection.
In the face of the unfortunate circumstances presented by the attorneys, the judge attempted to correct an improper impression asserted by counsel and to bring the proceeding back on track. However, in so doing, the judge assumed the role of an advocate and "passed on the truth of the facts alleged" in contravention of rule 3.230(d). In the calmness of considered deliberation, this Court is now limited to reviewing the correctness of the court's ruling below. As provided in rule 3.230(d), the presiding judge is limited to determining whether the motion for disqualification is legally sufficient. Therefore, I must agree *521 with the majority that the denial of postconviction relief must be reversed in this case.
GRIMES, Justice, dissenting.
The majority has properly established a procedure which should be followed when circumstances occurring in the middle of a trial prompt one of the parties to want to recuse the judge. However, I do not believe that reversible error occurred in this case. In fact, it was the failure to file a written motion of recusal or seek a continuance to do so which led to the judge's denial that the ex parte communication ever took place.
Florida Rule of Criminal Procedure 3.230 required that a written motion for recusal be filed accompanied by two or more affidavits and a certificate of good faith. Had the rule been followed, the judge would have been in a position to pass on the legal sufficiency of the motion without becoming involved in the truth of the allegations. As it was, Rogers' counsel made an oral motion based on the statement of his investigator, Jeff Walsh, that David Tumin told him that the judge had told Tumin that the judge had already made up his mind. Tumin denied even talking to the judge and said that what he had told Walsh was that it was his own opinion that the judge had made up his mind. Had Tumin's testimony and that of Walsh been put in affidavit form to support the motion, it would have been properly denied because it was Tumin who was said to have had the discussion with the judge and not Walsh. Walsh had no firsthand knowledge of what occurred.
It was only because no written motion had been filed and Tumin and Walsh had testified that the judge became involved in the truth of the allegations. Under these circumstances, I would not require a new evidentiary hearing and would proceed to address the other points on appeal.
OVERTON and McDONALD, JJ., concur.
NOTES
[1] The judge found that the murder was committed for pecuniary gain, was committed to prevent lawful arrest, was cold, calculated and premeditated, was committed during flight from an attempted robbery, and that Rogers had been convicted of a prior violent felony.
[2] We struck the following: pecuniary gain; to avoid arrest; and cold, calculated and premeditated.
[3] Rogers raises the following issues: 1) Rogers was denied a full and fair hearing on his rule 3.850 motion; 2) the prosecution intentionally withheld material evidence and failed to correct false testimony; 3) the trial court failed to meet the requirements of Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); 4) trial counsel was ineffective during the guilt phase; 5) the State introduced irrelevant, prejudicial, and inflammatory evidence of other crimes and bad character; 6) the State destroyed critical evidence; 7) the State impermissibly used a jailhouse informant to gather evidence; 8) Rogers was denied his right to confront witnesses when Mr. Edmundson was allowed to testify through a taped conversation; 9) the prosecutor used inflammatory argument; 10) the jury was improperly instructed concerning felony/premeditated murder; 11) the jury was improperly instructed concerning aggravating circumstances in violation of Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992); 12) trial counsel was ineffective during the penalty phase; 13) the jury was misled by instructions that diluted their sense of responsibility; 14) the jury was improperly instructed that mercy and sympathy were not allowed; 15) the jury instructions impermissibly shifted the burden of proof; 16) the jury and judge were provided with misinformation in sentencing.
[4] See Brown v. St. George Island, Ltd., 561 So.2d 253, 255 (Fla. 1990). Florida Rule of Criminal Procedure 3.230 has since been repealed, effective January 1, 1993, and replaced by Florida Rule of Judicial Administration 2.160. The Florida Bar re Amendments to Florida Rules of Judicial Administration, 609 So.2d 465 (Fla. 1992). The present motion for recusal was made in April 1991.