732 So.2d 1059 (1999)
Kenneth D. QUINCE, etc., Appellant,
v.
STATE of Florida, Appellee.
No. 89,960.
Supreme Court of Florida.
April 8, 1999.
Rehearing Denied June 15, 1999.
*1060 Terri L. Backhus, Chief Assistant CCRC and Jack W. Crooks, Assistant CCRC, Capital Collateral Regional CounselMiddle, Tampa, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Barbara J. Yates, Assistant Attorney General, Tallahassee, Florida, for Appellee.
PER CURIAM.
Kenneth D. Quince appeals an order entered by the trial court denying relief under Florida Rule of Criminal Procedure 3.850. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. For the reasons explained below, we affirm the trial court's denial of postconviction relief.
The facts and procedural history of this case are summarized in Quince v. State, 592 So.2d 669 (Fla.1992):
Quince pled guilty to first-degree felony murder and burglary following the sexual battery and strangulation death of an eighty-two-year-old woman in her home. He waived a sentencing jury and the judge imposed the death penalty, which was affirmed on appeal. Id. Quince filed *1061 a motion for postconviction relief in circuit court pursuant to Florida Rule of Criminal Procedure 3.850, and while the motion was pending the Governor signed a death warrant. The circuit court issued a stay of execution, granted an evidentiary hearing, but denied relief, which was affirmed on appeal. Quince v. State, 477 So.2d 535 (Fla.1985), cert. denied, 475 U.S. 1132, 106 S.Ct. 1662, 90 L.Ed.2d 204 (1986).
Quince subsequently filed a petition for writ of habeas corpus in federal district court, which was denied following an evidentiary hearing. During the pendency of the appeal of the denial in federal circuit court, Quince became aware of litigation pending before this Court in Harich v. State, 542 So.2d 980 (Fla.1989) (hereinafter Harich 1), concerning the alleged conflict of interest in trial counsel Howard Pearl's concomitant service as a special deputy sheriff. See also Harich v. State, 573 So.2d 303 (Fla.1990), petition for cert. filed[cert. denied], 499 U.S. 985, 111 S.Ct. 1645, 113 L.Ed.2d 740 (1991)(trial court's finding of no conflict of interest following an evidentiary hearing affirmed on appeal). Quince filed a subsequent 3.850 motion in circuit court claiming conflict of interest based on Pearl's representation of him, and successfully moved for dismissal of the federal appeal pending the state action. In November 1989, the circuit court summarily denied Quince's motion, relying on the record adduced in Harich's evidentiary hearing on the same issue. Quince filed a motion to disqualify the judge and a motion for rehearing, which were denied in February 1991.
Id. at 670.[1]
We reversed the denial of Quince's second 3.850 motion on appeal, reasoning that the trial court's adoption of factual findings from Harich was inappropriate and that an evidentiary hearing on Quince's "Howard Pearl" conflict claim was necessary. See id. at 670-71. We remanded the case to the trial court for "an evidentiary hearing on the conflict-of-interest issue." Id. at 671. We ordered the chief judge of the Seventh Judicial Circuit to consolidate all cases raising "Howard Pearl" conflict claims and after conducting an evidentiary hearing on those claims, the trial court denied relief to all defendants including Quince. We vacated the order on appeal and remanded for individual hearings, finding that the consolidated evidentiary hearing violated the capital defendants' due process rights. See Teffeteller v. Dugger (Quince v. State), 676 So.2d 369 (Fla. 1996). The trial court conducted Quince's evidentiary hearing in November 1996 and thereafter denied 3.850 relief. This appeal follows.[2]
On remand for an individual hearing, Quince moved to disqualify the original trial judge, who was a witness in the consolidated hearing. The motion was granted. Quince then moved to disqualify the successor judge, Judge Johnson. Quince argues his second motion to disqualify should have been granted. We disagree. Quince moved to disqualify Judge Johnson because Johnson had been the appellate coordinator in the public defender's office during the time Howard Pearl represented Quince. The judge responded that he "might have indirectly been involved in the processing and the administration of seeing to it that [Quince's] appeal was filed in 1980." As to the extent of his relationship with Pearl, Judge Johnson stated:
My most vivid recollection of my relationship with Mr. Pearl is about my *1062 years in the public defender's office was a time when I required and sent something around that required the lawyers to do something and he got very mad at me and came pounding on my office door somewhat incensed. We got that straightened out, but that's my most vivid recollection of my relationship with Mr. Pearl.
Quince's motion was governed by rule 2.160(g)[3] a of the Florida Rules of Judicial Administration and section 38.10, Florida Statutes (1995).[4] Both the rule and statute state that a successive judge is not disqualified "unless such judge admits and holds that it is then a fact that he does not stand fair and impartial between the parties." § 38.10, Fla. Stat. (1995). The record shows that Judge Johnson heard argument, recessed to consider the law, then held that he stood fair and impartial in Quince's case. He denied both the motion and Quince's request for time to appeal.[5]
The issue this Court must decide is whether Judge Johnson abused his discretion in denying either the motion or the request.[6] A court's ruling on a discretionary matter will be sustained unless no reasonable person would take the view adopted by the court. See Huff v. State, 569 So.2d 1247, 1249 (Fla.1990). Quince has failed to demonstrate that no reasonable person would take the position of the trial court in denying his motion to disqualify where the judge may have had an administrative responsibility involving his appeal but where the judge's own recollection was of a negative encounter with Howard Pearl. These facts do not support Quince's allegation of bias. Thus, we find no error.
Quince also claims that the court should have stopped the proceeding to allow him to appeal the denial of the motion to disqualify. He relies on Rogers v. State, 630 So.2d 513, 516 (Fla.1993) ("Where a party discovers mid-trial or mid-hearing that a motion for disqualification is required, he or she may request a brief recesswhich must be grantedin order to prepare the appropriate documents."). Rogers is inapposite because it concerns a mid-hearing revelation of facts warranting a motion to disqualify. The present case, on the other hand, concerns a request for time to appeal a motion to disqualify which *1063 was ruled upon prior to the hearing. We find no error on this point.
Quince next argues that the trial court improperly limited his presentation of evidence pertaining to ineffectiveness of counsel. We disagree. This Court considered Quince's claims of ineffective assistance in Quince v. State, 477 So.2d 535, 537 (Fla.1985),[7] and found that his claims failed to show that counsel's performance was deficient. The claims are therefore procedurally barred. See Davis v. State, 589 So.2d 896, 898 (Fla.1991). This case was remanded solely "for an evidentiary hearing on the [Howard Pearl] conflict-of-interest issue." Quince, 592 So.2d at 671.[8] We find no error in the scope of the hearing below.
Quince next claims that he was denied a fair trial because of Howard Pearl's undisclosed conflict of interest, i.e., his status as special deputy sheriff. The trial court addressed this claim at length in its order denying rule 3.850 relief:
[T]his Court finds as a matter of fact that Mr. Pearl never was and never has been a law enforcement officer with the Marion County Sheriffs Department. Mr. Pearl was in essence granted a concealed weapons permit from the Marion County Sheriffs Department as many other individuals were at that time. Counter to defense counsel's assertions, the Court determines from the facts presented that Mr. Pearl had no manifest or actual authority to act as a fully constituted Deputy Sheriff for the Marion County Sheriffs Department because at no time did he indicate to anyone that he possessed anything other than a "gun toter's permit" as a result of his special deputy status.
. . . .
Based on this Court's factual findings with respect to the actual scope of Mr. Pearl's duties as a special deputy sheriff with the Marion County Sheriffs Department, it finds that those duties were not in conflict with Mr. Pearl's duties as a defense attorney. Consequently, no per se conflict of interest between Mr. Pearl and the Defendant existed. See Harich v. State, 573 So.2d 303, 305 (Fla. 1990) (finding no per se conflict of interest where defense counsel was special deputy sheriff at time of representation).
. . . .
To prove a claim that an actual conflict of interest existed between a defendant and his counsel, the defendant must show that his counsel actively represented conflicting interests and that the conflict adversely affected counsel's performance. See Cuyler v. Sullivan, 446 U.S. 335, 348, 350, 100 S.Ct. 1708, 1718, 1719, 64 L.Ed.2d 333 (1980); Buenoano v. Dugger, 559 So.2d 1116, 1120 (Fla.1990); Burnside v. State, 656 So.2d 241, 243 (Fla. 5th DCA 1995). As such, the Defendant has failed to demonstrate *1064 that any actual conflict of interest existed between the Defendant and his attorney Howard Pearl and no factual distinction was presented beyond the Howard Pearl status issues raised and disposed of in Harich.

Supporting this determination the Court finds that not only did the Public Defender, Jim Gibson, testify that he never questioned Mr. Pearl's abilities or ethics, but, he believed that Mr. Pearl was the "most experienced and qualified attorney in the Public Defender's Office" at the time of Howard Pearl's representation of the Defendant. Mr. Gibson further testified that although the policy for taking pleas had changed to only accepting pleas through a negotiated plea agreement, he would not disapprove of a general guilty plea in certain cases. Furthermore, that policy change did not take place until after the Defendant in the instant case entered a plea of guilty and received a death sentence. Finally, Mr. Gibson testified that he requested Mr. Pearl to resign his special deputy status because it had become an issue in postconviction and not because he in anyway believed it was a viable or meritorious issue, or even an issue at all. Additionally, Mr. Pearl testified that he loyally and diligently represented many capital defendants and did not end his capital representation of defendants until 1993, well after the resignation of his special deputy status.
In conclusion, the Court finds that no evidence or testimony was presented by the Defendant demonstrating an actual conflict of interest between Howard Pearl and the Defendant during his representation of the Defendant.
(Footnotes omitted.)
A conflict of interest claim emanates from the Sixth Amendment guarantee that criminal defendants have the right to effective assistance of counsel. This guarantee includes the right to representation free from conflict. See Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The question of whether a defendant's counsel labored under an actual conflict of interest that adversely affected counsel's performance is a mixed question of law and fact. See Cuyler v. Sullivan, 446 U.S. 335, 342, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).
The case below involved two separate claims of conflict of interest based upon the fact that trial counsel served as a special deputy sheriff in Marion County at the same time that he represented Quince. First, Quince claimed that Pearl's status represented a conflict of interest per se. Second, Quince claimed that an actual conflict of interest existed between Pearl and him. In certain Sixth Amendment contexts, prejudice is presumed and the claimant need not make a specific showing of prejudice. See Strickland, 466 U.S. at 692, 104 S.Ct. 2052 (stating that actual or constructive denial of assistance of counsel and various kinds of state interference with counsel's assistance are legally presumed to result in prejudice); United States v. Cronic, 466 U.S. 648, 659 & n. 25, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). However, as to most claims of ineffective assistance of counsel based upon conflict of interest, a more limited presumption of prejudice applies. See Strickland, 466 U.S. at 692, 104 S.Ct. 2052 ("Prejudice is presumed only if the defendant demonstrates that counsel `actively represented conflicting interests' and that `an actual conflict of interest adversely affected his lawyer's performance.'") (quoting Cuyler, 446 U.S. at 350, 348, 100 S.Ct. 1708).
The inquiry below into the nature of Pearl's status as a special deputy sheriff was primarily factual, and the record supports the trial court's determination that Pearl "never was and never has been a law enforcement officer with the Marion County Sheriffs Department." Thus, we agree with the trial court's conclusion that Pearl's status as a special deputy sheriff did not constitute a per se conflict.
*1065 In addition to this determination, the trial court made a legal determination that Quince did not demonstrate that an actual conflict of interest existed between his counsel and him. As explained by the United States Supreme Court, "a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance" in order to prevail on a conflict of interest claim. Cuyler, 446 U.S. at 350, 100 S.Ct. 1708 (emphasis added). "[T]he possibility of conflict is insufficient to impugn a criminal conviction." Id. In illustrating the difference between a possible conflict and an actual conflict, the Supreme Court cited its previous decisions in Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and Dukes v. Warden, 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972). See Cuyler, 446 U.S. at 348-50, 100 S.Ct. 1708. The Supreme Court reversed the defendant's conviction in Glasser because the record revealed omissions by defense counsel which were intended to diminish the jury's perception of a codefendant client's guilt. See Cuyler, 446 U.S. at 348-49, 100 S.Ct. 1708. In contrast, the Court did not grant habeas corpus relief in Dukes on a claim that the lawyer's conflict of interest infected the defendant's plea because the defendant could not identify any actual lapse in representation in the record. See Cuyler, 446 U.S. at 349, 100 S.Ct. 1708. The Court explained that "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." Id. at 350, 100 S.Ct. 1708.
We agree with the trial court's legal conclusion below that Quince failed to demonstrate actual conflict because he failed to show that Pearl actively represented conflicting interests. Thus, Quince did not meet the necessary constitutional predicate for his "Howard Pearl" conflict of interest claim and the trial court did not err in denying the claim.
Based on the foregoing, we affirm the denial of Quince's 3.850 motion.
It is so ordered.
HARDING, C.J., SHAW, WELLS, ANSTEAD and PARIENTE, JJ., and OVERTON, Senior Justice, concur.
NOTES
[1] Quince's federal proceedings were administratively closed on October 26, 1990, pending exhaustion of his state remedies. See Quince v. Dugger, No. 86-685-CIV-ORL-19, 1990 WL 357355 (M.D.Fla. Oct.26, 1990).
[2] Quince raises three issues, claiming error on the following points: (1) motion to disqualify Judge Johnson and request for time to appeal; (2) ineffective assistance of counsel; and (3) "Howard Pearl" conflict of interest.
[3] Rule 2.160(g) provides:

(g) DeterminationSuccessive Motions. If a judge has been previously disqualified on motion for alleged prejudice or partiality under subdivision (d)(1), a successor judge shall not be disqualified based on a successive motion by the same party unless the successor judge rules that he or she is in fact not fair or impartial in the case. Such a successor judge may pass on the truth of the facts alleged in support of the motion.
Fla. R. Jud. Admin. 2.160(g).
[4] Section 38.10, Florida Statutes (1995), states in pertinent part:

[W]hen any party to any action has suggested the disqualification of a trial judge and an order has been made admitting the disqualification of such judge and another judge has been assigned and transferred to act in lieu of the judge so held to be disqualified, the judge so assigned and transferred is not disqualified on account of alleged prejudice against the party making the suggestion in the first instance, or in favor of the adverse party, unless such judge admits and holds that it is then a fact that he or she does not stand fair and impartial between the parties. If such judge holds, rules, and adjudges that he or she does stand fair and impartial as between the parties and their respective interests, he or she shall cause such ruling to be entered on the minutes of the court and shall proceed to preside as judge in the pending cause. The ruling of such judge may be assigned as error and may be reviewed as are other rulings of the trial court.
§ 38.10, Fla. Stat. (1995).
[5] Judge Johnson also denied the motion as untimely because it was filed the day of the hearing (November 8, 1996) and he had been the assigned judge for two months (September 4, 1996). However, this point is moot because the judge considered the motion and denied it on other grounds.
[6] See § 38.10, Fla. Stat. (1995) ("The ruling of such judge may be assigned as error and may be reviewed as are other rulings of the trial court.").
[7] In his first 3.850 motion, Quince claimed that his trial counsel, Howard Pearl, was ineffective in various respects, including:

spending insufficient time conferring with appellant; not contacting friends and relatives; not attempting to suppress appellant's confessions; not demanding discovery; persuading appellant to plead guilty and waive the right to an advisory sentencing jury; not researching the admissibility of appellant's juvenile records; not researching the applicability of the aggravating circumstances in a felony murder context in which the underlying felony is a sexual battery with a concomitant burglary; not adequately reviewing appellant's PSI [presentence investigation report] with him and objecting to irrelevancies contained therein; not objecting to the state's introduction of psychiatric reports based on examinations administered without Miranda warnings; not calling various witnesses he might have called to adduce evidence of nonstatutory mitigating factors.
Quince, 477 So.2d at 536-37.
[8] See also Teffeteller v. Dugger (Quince v. State), 676 So.2d 369, 371 (Fla.1996) (remanding after consolidated hearing on Howard Pearl conflict issue for "those claims which raise ineffective assistance of trial counsel that are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced the defendant").