656 So.2d 241 (1995)
Scott Allen BURNSIDE, Appellant,
v.
STATE of Florida, Appellee.
No. 93-415.
District Court of Appeal of Florida, Fifth District.
June 7, 1995.
*242 William W. Carpenter, Longwood, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Bonnie Jean Parrish, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Scott Allen Burnside appeals his convictions for criminal solicitation to commit murder in the first degree, conspiracy to commit murder in the first degree, accessory after the fact to murder in the first degree, and four counts of murder in the first degree. Burnside contends that the trial court deprived him of effective assistance of counsel by failing to rule on the state's pre-trial motion to disqualify Burnside's trial counsel[1] for conflict of interest. At the state's request we relinquished jurisdiction so that the trial court could rule on the ineffective assistance of counsel issue after an evidentiary hearing. The trial court ruled adversely to Burnside on this issue. Burnside also faults the trial court for admitting hearsay statements of John Barrett, the person who carried out the murders. We find that the trial court erred on both issues, reverse the convictions and remand for a new trial.
The state presented evidence at trial that Doc Sanders, Jr., persuaded Burnside and Doc's son to arrange the murder of Doc's former wife. The motive was to prevent the former wife from prevailing in post-dissolution litigation. Burnside and Doc's son hired Barrett to commit the murder at the former wife's home. Barrett failed to kill the former wife although he had at least one opportunity to do so. Instead, he brutally murdered four men during the course of the day that he spent at the former wife's home. Immediately after the murders, Burnside furnished money to Barrett to flee to Ohio, where Barrett was apprehended.
Because the state was only interested in securing a death penalty, Burnside attempted to gain concessions by making an evidentiary proffer. As a result of that proffer, the prosecutor then listed Burnside as a potential witness in Doc Sanders' pending trial. Later, the prosecutor was advised by Sanders' attorneys that Burnside's trial counsel had attempted to discuss favorable testimony that Burnside could offer at Sanders' trial. *243 Burnside's trial counsel allegedly asked Sanders' attorneys if Sanders could assist Burnside. Sanders' attorneys inferred from the statements made by Burnside's trial counsel that he might have intended to relay an offer that Burnside would give perjured testimony in exchange for Sanders' giving financial assistance to Burnside's family.
The prosecutor filed a complaint with the Florida Bar against Burnside's trial counsel, and conducted an investigation by securing sworn statements about the offer from Burnside's trial counsel. Admitting in his statement that he had conveyed Burnside's offer to Sanders' attorneys, Burnside's trial counsel said that, rather than making an offer, his intent was to demonstrate to Sanders' attorneys the "element" with which they were dealing. He also alluded to Burnside's propensity to lie and to manipulate, and stated that Burnside has got to "stop scamming everybody."
The prosecution then placed trial counsel on its witness list and moved to disqualify him as Burnside's counsel. The prosecutor told the trial court that if Burnside testified at trial, and if his testimony deviated materially from his proffer, the state would call Burnside's trial counsel as a rebuttal witness. Burnside opposed the motion to disqualify and prevailed. Nevertheless, the court refused to rule on Burnside's later motion to strike his trial counsel's name from the state's witness list, thus leaving open the possibility that trial counsel might be called by the state to testify against Burnside.
Burnside claims that he was denied effective assistance of counsel because the possibility that his trial counsel would have to testify against him created a conflict of interest between them. That is, if Burnside testified, trial counsel might have to testify, and, if trial counsel testified, he could be open to charges of witness tampering. The only way trial counsel could avoid this liability, Burnside argues, was to advise Burnside not to testify.
The right to counsel under the Sixth and Fourteenth Amendments to the Constitution of the United States is the right to effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (Fla. 1984), a case involving allegedly deficient performance by counsel  as opposed to a conflict of interest  the Court held that a defendant seeking to reverse a conviction based on ineffective assistance must meet a two part test. First, he must show that counsel's performance was deficient  that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed under the Sixth Amendment. Id., 466 U.S. at 687, 104 S.Ct. at 2064. Second, the defendant must show that the deficient performance prejudiced the defense  that counsel's errors were so serious as to deprive the defendant of a fair trial. Id.
The second prong, prejudice, is presumed in cases involving the actual or constructive denial of assistance. Id., 466 U.S. at 692, 104 S.Ct. at 2067. Conflict of interest cases warrant a similar, though more limited, presumption of prejudice. Although it is a "fairly rigid rule of presumed prejudice," it is "not quite the per se rule of prejudice" that is applicable in denial of counsel cases. Id. In conflict of interest cases prejudice is presumed "only if the defendant demonstrates that counsel `actively represented conflicting interests' and that `an actual conflict of interest adversely affected his lawyer's performance'". Id., quoting Cuyler v. Sullivan, 446 U.S. 335, 348, 350, 100 S.Ct. 1708, 1718, 1719, 64 L.Ed.2d 333 (1980).
In Cuyler the alleged conflict arose out of the representation of three defendants by the same attorneys. In such a situation, an actual conflict occurs if, during the course of the representation, the defendants' interests diverge with respect to a material factual or legal issue or to a course of action. Id., 446 U.S. at 355 n. 3, 100 S.Ct. at 1721 n. 3. (Marshall, J., concurring in part).
The instant case concerns not the divergent interests of co-defendants, but the alleged divergence of Burnside's interests and those of trial counsel. "A situation in which the attorney's own interests diverge from those of the client presents the same core *244 problem presented in the multiple representation cases: the attorney's fealty to the client is compromised." U.S. v. Fulton, 5 F.3d 605 (2d Cir.1993). "Therefore, courts have held that the presumption of prejudice set forth in Cuyler applies as well to situations where the personal interests of the attorney and the interests of the client are in actual conflict." Id., citing United States v. McLain, 823 F.2d 1457, 1463-64 (11th Cir.1987) (actual conflict when counsel, unbeknownst to defendant, had been under investigation for bribery).
We conclude that, because of the state's threat to call trial counsel as a witness if Burnside testified contrary to his proffer, trial counsel had a personal stake in the decision whether to put Burnside on the stand. That is, if Burnside did not testify, trial counsel would avoid again having to give sworn testimony regarding the alleged offer to sell testimony. Further, it cannot be gainsaid that counsel had an actual, as opposed to potential, conflict of interest. The fact that the prosecutor may not have made an irrevocable decision to call trial counsel as a witness, or the fact that the trial court did not make a final decision whether counsel could be required to testify, did not cause the conflict to be a mere potential one. It was an actual conflict any time consideration was given to the question whether Burnside should testify.
The second prong of Cuyler requires a showing that the conflict adversely affected the lawyer's performance. 446 U.S. at 348, 100 S.Ct. at 1718. Although prejudice is presumed in conflict of interest cases, it is presumed upon a showing by the defendant that the conflict had an adverse effect on counsel's performance  an actual lapse in representation. See Cuyler, 446 U.S. at 349, 100 S.Ct. at 1718-19. In the instant case, Burnside contends that the conflict adversely affected trial counsel's ability to advise Burnside whether he should testify. At the hearing held after this court relinquished jurisdiction, trial counsel testified that Burnside made the final decision not to testify, but it is clear that trial counsel so advised him.
In United States v. Fahey, 769 F.2d 829 (1st Cir.1985), the court, combining the two prongs of Cuyler, determined that to be entitled to relief in cases in which an attorney's misfeasance is an act of omission, rather than commission, the defendant must show:
First, some plausible alternative defense strategy or tactic might have been pursued. He need not show that the defendant would necessarily have been successful if it had been used, but that it possessed sufficient substance to be a viable alternative. Second, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.
Id. at 835.
In the instant case, Burnside has made that showing. First, as Burnside stated at his sentencing hearing, he could have testified Barrett was in so deranged a state of mind after the murders that Burnside and the others present feared for their own safety. Such testimony might have convinced the jury that the killings were the product of Barrett's derangement rather than the product of a conspiracy involving Burnside. Indeed, the main theme of the defense during the jury trial was that Barrett abandoned the original conspiracy to kill the former wife and launched his own independent plan to kill four men who were not connected with Doc Sanders' plan. Second, the alternative of having Burnside testify was an inherent conflict with trial counsel's interest in his professional reputation.
We also note that trial counsel's testimony against Burnside during the prosecutor's investigation was an act of commission which manifested and constituted an adverse effect on trial counsel's representation of Burnside.
The trial judge's second error was admitting the hearsay testimony of a friend of Barrett in Ohio with whom Barrett hid after his post-murder flight from Florida. Over objection, Donald Campbell was allowed to testify that Barrett had told him that Barrett had killed four people in Florida because it was necessary to do so in carrying out a contract to kill one. This testimony supported the state's argument that the four *245 murders were the result of the original conspiracy involving Burnside rather than Barrett's independent acts that did not further the conspiracy. When Barrett spoke to Campbell after the murders, any conspiracy had ended; the statement was not the admission of a co-conspirator during the course and in furtherance of the conspiracy. See § 90.803(18)(e), Fla. Stat. (1991). Nor was there any record showing or finding that John Barrett was unavailable to testify at Burnside's trial. See § 90.804(1), Fla. Stat. (1991). There was no other argument presented that would provide a legal basis for the admission of the hearsay statement. And, it was not harmless testimony in view of the available argument, based on the state's evidence, that Barrett had deviated from the original purpose of the conspiracy when he committed four unnecessary homicides. The state's argument that Barrett's statement to Campbell after his flight to Ohio was somehow in furtherance of the conspiracy to kill the former wife is incorrect. The hearsay objection to Campbell's testimony should have been sustained.
REVERSED; REMANDED.
HARRIS, C.J., and COBB and PETERSON, JJ., concur.
NOTES
[1] Trial counsel was not the present appellate counsel for Burnside.