THOMPSON, J.
Geoffrey William Calvert was tried on two counts of first-degree murder and one count of aimed robbery in connection with two shootings which occurred on 28 February 1995 at the Lopez Plaza, a shopping center in Palm Bay, Florida. Kris Miller and Matthew Amos were shot in the head during a prearranged drug buy. At trial, the evidence showed that Calvert and two other youths, Dennis Calabrese and Robert McKevitt, had planned to rob Miller of the drugs instead of paying him as agreed. Fearing retaliation by Miller, the three decided to kill Miller and anyone who might accompany him to Lopez Plaza. At approximately midnight, Miller and Amos met Calvert and his cohorts as arranged. Miller was told to deal with Cala-brese. After Miller handed over the LSD, Calabrese shot Miller, who died instantly, then shot Amos, who died days later.
Calvert was found guilty and sentenced to life in prison. He appeals his convictions and sentences, raising several issues: the denial of his motion to suppress confessions or statements; the reading of the instruction on the principal theory during jury selection; the dismissal of a prospective juror for cause; the admission of co-conspirator hearsay statements; the denial of his request for a jury instruction on voluntary intoxication; and the trial court’s clarification of the felony-murder instruction. The last of these was not preserved for appellate review. We affirm.
DENIAL OF THE MOTION TO SUPPRESS
Calvert gave Palm Bay police two pre-arrest recorded statements and one after his arrest. He argues the circumstances surrounding his questioning led him to reasonably conclude he would not be prosecuted in connection with the robbery and shootings. He claims his pre-arrest waivers of rights were invalidated by implied promises from police that he would be treated solely as a witness. As such, he argues, the pre-arrest statements were involuntary, and his post-arrest confession was tainted by the earlier improperly obtained statements.
A statement or confession is not voluntarily given if it is induced by direct or implied promises. Johnson v. State, 696 So.2d 326 (Fla.1997); State v. Orlando Vocal Feroben, 677 So.2d 980 (Fla. 5th DCA 1996). “Statements suggesting leniency are only objectionable if they establish an express quid pro quo bargain for the confession.” Bruno v. State, 574 So.2d 76, 79-80 (Fla.1991). A finding by the trial court that a confession or statement was freely and voluntarily given is presumed correct. Acensio v. State, 497 So.2d 640 (Fla.1986). Where the evidence is conflicting, the trial court’s finding will not be disturbed. Thomas v. State, 456 So.2d 454 (Fla.1984).
We find no evidence Calvert received any express or implied promises in return for his first statement. After giving that statement, Calvert expressed fear that McKevitt would hurt or kill him, and the police put Calvert in protective custody overnight. Calvert testified that during this time, either or both investigating detectives said something to him about talking to the State Attorney to see if Calvert could be a prosecution witness. The detectives, however, testified that no such statement was made, and, though they believed Calvert was only a witness, they did nothing to convey their belief to him. The evidence of an implied promise of leniency is therefore conflicting. Moreover, there is no evidence anything was promised to Calvert in return for his statements. Accordingly, we affirm the denial of Calvert’s motion to suppress. Bruno; Thomas.
*319 JURY SELECTION
Calvert asserts that, during voir dire, the court repeatedly read to prospective jurors the instruction on principals. He argues this placed undue emphasis on one aspect of the State’s case and deprived him of the jury’s fair consideration of all the issues in the case. We disagree. The record does not show that the trial court “repeatedly” read the instruction. Rather, on one occasion, the court read the instruction and immediately reread it at the request of one prospective juror. Much later, after eleven jurors had been selected, the court read the instruction for a venire member who was not present for the first reading. The State asked the court to read the instruction so prospective jurors could be questioned on their ability to apply the principal theory. This was a legitimate voir dire tactic, see Milton Hirsch, Hirsch’s Florida Criminal Trial Procedure at 291 (3d ed.1998).
Calvert also challenges the dismissal of prospective juror Polhill for cause. During voir dire, Polhill said of our criminal justice system that he feels the punishment sometimes does not fit the crime. He said it would at times be difficult to put aside his feelings regarding an appropriate sentence and render a verdict solely on the facts and evidence. He answered similarly when asked about the principal theory, stating he could have difficulty applying that law if it would result in a sentence not befitting the crime. Polhill stated he disagreed with the principal theory insofar as it would permit a defendant to be found guilty of a killing though the defendant was involved only in planning a lesser crime and the killing was beyond his control. After the court assured him this was not a death penalty case, Polhill stated he could apply the law on principals, though he did not like it.
We cannot say the trial court erred in finding this single statement insufficient to overcome Polhill’s bias against the principal theory and concerns about harsh sentencing. See Foster v. State, 679 So.2d 747 (Fla.1996) (trial court’s determination that challenge for cause is proper not to be disturbed absent showing of manifest error); Massad v. State, 703 So.2d 1134 (Fla. 5th DCA 1997) (trial judge must determine whether juror’s bias or prejudice is overcome with assurances that juror can, in spite of them, render fair verdict). In this case, the principal theory applied to every offense charged, including felony murder, and to the lesser included offenses. The possibility that Calvert could be found guilty of felony murder under the principal theory is a situation Polhill specifically stated he could not countenance.
CO-CONSPIRATOR HEARSAY STATEMENTS
Calvert argues the State failed to establish that the hearsay statements of McKevitt and Calabrese were made during and in furtherance of a conspiracy, or even that a conspiracy existed. See § 90.803(18)(e), Fla. Stat. (1995). We find the State sufficiently established, through McKevitt’s in-court testimony, the existence of a conspiracy to commit robbery and murder and Calvert’s participation in the conspiracy. We further find that McKevitt’s hearsay statements were properly admitted. Calabrese’s statements, however, were made after the robbery and shootings had occurred, and thus, after the conspiracy ended. They were therefore inadmissible under section 90.803(18)(e). See Burnside v. State, 656 So.2d 241 (Fla. 5th DCA 1995); Usher v. State, 642 So.2d 29 (Fla. 2d DCA 1994). Nevertheless, testimony from McKevitt and other witnesses, along with Calvert’s pretrial admissions, sufficiently evidenced Calvert’s participation in planning and carrying out the robbery and murders. Calabrese’s statements simply described what transpired at Lopez Plaza, and any error in admitting them was harmless. State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
DENIAL OF VOLUNTARY INTOXICATION INSTRUCTION
Calvert asserts he was entitled to an instruction on voluntary intoxication because there was testimony that he consumed marijuana prior to the shootings and that he was intoxicated. Voluntary intoxication is a *320 defense to a specific intent crime.[1] Stevens v. State, 693 So.2d 144 (Fla. 5th DCA 1997). A voluntary intoxication instruction is only required where the defendant produces “evidence of his intoxication sufficient to establish that he was incapable of forming the intent necessary to commit the crime.” Id. at 145 (citing Linehan v. State, 476 So.2d 1262 (Fla.1985)). There was no evidence that Calvert was intoxicated when the robbery and, later, the killings were planned. The evidence only showed Calvert smoked marijuana at some point between planning to rob Miller and planning to kill him and anyone accompanying him to Lopez Plaza. Evidence of consumption alone is not sufficient to require that the voluntary intoxication instruction be given. Id.
AFFIRMED.
COBB and ANTOON, JJ., concur.

. The jury was instructed it could find Calvert guilty of first-degree murder by either premeditated murder or felony murder for which robbery was the underlying felony. Robbery and premeditated murder are specific intent crimes.