421 So.2d 1077 (1982)
In re Inquiry Concerning a Judge, Honorable W. Fred TURNER.
No. 61218.
Supreme Court of Florida.
October 28, 1982.
Steven A. Werber of Commander, Legler, Werber & Dawes, Jacksonville, for the Florida Judicial Qualifications Com'n, petitioner.
James G. Etheredge of Etheredge & Miller, Fort Walton Beach, for respondent.
PER CURIAM.
This Court is presented with recommendations from the Florida Judicial Qualifications Commission regarding the Honorable W. Fred Turner, Circuit Judge of the Fourteenth Judicial Circuit. That commission has made findings of misconduct and recommends a public reprimand. We accept its findings and adopt its recommendation. Because of the significance of any finding of misconduct of a judicial officer, we publicize the findings in full.

FINDINGS
The Florida Judicial Qualifications Commission by a vote of at least nine of its members found the Respondent Judge guilty of the misconduct alleged in the following Counts and found the following facts:

COUNT I
(a) A hearing was held before Judge Turner on March 2, 1981 involving the custody of a minor child. Three witnesses testified as to the relative fitness of the mother, Cindy Ann Adams (Cindy), and the father, William B. Adams, regarding the custody of the minor child. Available time did not permit the Court to hear the testimony of other witnesses, including the mother and father. At the time of the hearing temporary custody was in the mother and at the conclusion of the hearing the Court announced that it would remain in the mother and ordered that a home study of each party be conducted by the Department of Health and Rehabilitative Services. Of significance is the statement by Judge Turner that the Department should be considered by the parties as "the eyes and ears of the Court". Judge Turner also testified that during or after the hearing he told either Cindy or her lawyer, Pamela Sutton, that Cindy should not have any men spending the night with her. Both Cindy and Ms. Sutton stated that they did not hear the Judge give any such admonition.
At approximately 7:30 p.m. on the evening of the hearing, Judge Turner, without notice to the parties or their counsel, visited the home of Cindy Adams, who is a 23-year-old attractive young lady, for the announced purpose of determining whether *1078 she was entertaining any male visitors and to observe the overall environment of the home. Judge Turner was invited to inspect the home and particularly the bedrooms, and that occupied by the minor child, but he declined to do so.
A male visitor, Jack Needham, was in the home, having been invited to dinner, and at the time of the Judge's visit was watching a television program with Cindy and her minor son. Judge Turner inquired as to Jack Needham's name and left shortly thereafter.
Approximately 20 minutes later Judge Turner returned to the home and upon entering inquired "is Jack still here?", to which Cindy replied, "Yes, he's in the bathroom". When Jack returned to the living room, Judge Turner admonished him and stated that his presence was jeopardizing Cindy's chances of continuing to have custody of her son. Cindy responded that her attorney had advised her to have visitors for her protection.[2]
Judge Turner replied, "I'm telling you that he (Jack) shouldn't be here." He then wiggled his fingers stating that he (Judge Turner) was like a rattlesnake and that a rattlesnake shakes his rattle just before he strikes. The Judge then departed.
Shortly after the Judge departed, Cindy, who was confused by the Judge's visits, went to the home of her nearest neighbor and telephoned her attorney for advice.
At approximately 12:30 a.m., Judge Turner returned to the trailer. The trailer was dark and the Judge pounded on the door and repeatedly called out, "Mrs. Adams, Mrs. Adams (Cindy), are you there?" He then walked around the trailer, continuing to call her name and at the same time shined his flashlight into several windows, including her bedroom window. Cindy, who was in bed with her son (Jack having departed hours ago), pulled the covers over her head and did not respond  finally, after approximately 10 minutes, the Judge left.
The following morning, shortly before 9:00 a.m., Judge Turner's secretary telephoned Cindy's attorney, Pamela Sutton, and requested that she appear at Judge Turner's chambers for a conference regarding Cindy's case. Ms. Sutton appeared as was requested and upon observing that the husband's attorney was not present, advised the Judge that she felt it would be improper to discuss any facet of the case on an ex-parte basis. Judge Turner responded that it was perfectly all right to discuss the case and then informed her that he had "dropped in on" Cindy the evening before and had returned some 20 minutes later (of which Ms. Sutton was well aware). The Judge advised her that he was "shocked" that Cindy would have a man in her home the very night after her court appearance and that he wanted Ms. Sutton to monitor the situation. Ms. Sutton asked for a clarification of what she was to monitor. The Judge announced that he didn't want any overnight visitors for sexual purposes "or that sort of thing going on".
Since Judge Turner had only observed a male visitor watching television at approximately 7:30 p.m. in the company of Cindy and her young son, Ms. Sutton was confused as to the Judge's reference and requested that he enter a written order clarifying specifically his directions. He refused to do so and announced his intention to schedule a hearing for the purpose of determining the reason for Jack Needham's presence in the home. The foregoing conference lasted approximately 20 minutes during which time Ms. Sutton repeatedly objected to its ex-parte nature as well as to the Judge's home visits which she characterized as similar to an unauthorized jury view and further stated that the Judge, by his conduct, had become a witness and could no longer exercise his judicial role.
Of material significance to the Commission is the fact that Judge Turner, at no time during the conference, revealed the fact that he had made a third visit to the house trailer.[3]
Ms. Sutton forthwith filed a Motion to Recuse Judge Turner supported by full affidavits from Cindy Adams, Jack Needham and herself setting forth in detail the foregoing facts. The Motion for Recusal *1079 contained the additional ground that Judge Turner had previously, while an Attorney, represented the husband in a criminal case, a fact of which Judge Turner was unaware until it was called to his attention. Judge Turner entered an order granting the Motion for Recusal solely on the ground of his prior representation of the husband and specifically found that although he had considered the other grounds of the motion, they were without merit.
The Commission finds that Judge Turner's visits to the home of Cindy Adams were beyond the scope of his judicial role and constituted an abuse of his judicial powers. Even assuming that his visits were for the purpose of enforcing his alleged "no overnight visitors" instructions, it is readily apparent that a visit at 7:30 p.m. would not accomplish this purpose. Furthermore, the pounding upon her door and shining a flashlight in her bedroom window is conduct that cannot be justified. Finally, the ex-parte communication with Ms. Sutton constitutes a direct violation of the Code of Judicial Conduct.

COUNT II
(b) At the conclusion of the three-day trial of State of Florida v. Cater and Sherrill, case number 76-627, on December 21, 1979 (four days prior to Christmas), Judge Turner adjudged Attorney Tom Ingles in contempt of court and sentenced him to a fine of $75 or 24 hours in jail. Upon Mr. Ingles' failure to pay the fine, the Judge directed that he be incarcerated in the county jail. Mr. Ingles was "booked" by being photographed with a number dangling from his neck, his belt and personal items were removed from his clothing, and in general he was treated as a common criminal. As a result of the Judge's actions, the television media in the Panama City area broadcast this incident resulting in considerable embarrassment to Mr. Ingles' family and friends. The Judge asserted that he had repeatedly informed Mr. Ingles that he was not following instructions and rulings of the court as to the proper method of impeaching a witness and that Mr. Ingles' failure to do so was willful. A review of the transcript of the trial proceedings, together with the testimony adduced during this hearing, completely fails to support the Judge's contentions and affirmatively demonstrates that the finding of contempt was unwarranted. In holding Mr. Ingles in contempt, Judge Turner displayed an arrogant attitude which constituted an arbitrary abuse of his powers as a Circuit Judge.
(c) Conflicting testimony was presented in the trial of State of Florida v. Manuel B. Hutchinson, on April 29, 1980, by witnesses Kathy Johns and Bill Grinslade. Judge Turner decided that one of the two witnesses was lying; it follows, therefore, that one was telling the truth. The Judge thereupon directed that the two witnesses be taken into custody and held without bond so that the State Attorney could investigate the matter and institute perjury charges against the witness who was lying. While the witness Grinslade was released shortly thereafter, Kathy Johns, although never having been formally charged with any crime or offense, was taken to the Bay County Jail and incarcerated for several hours.
The Commission finds that the conduct of Judge Turner, in depriving these two citizens of elementary due process, constitutes an arrogant, arbitrary and capricious abuse of his powers as a Circuit Judge.
(d) On May 17, 1979, in Allen v. Whisenhunt, Judge Turner summarily held a young attorney, DeDee Costello, in contempt of court with the admonition "... we will settle this matter at the end of this case", for making objections to the Judge's comments from the bench. This was done in the presence of other lawyers, her client, and spectators. The Judge made derogatory comments as to the expertise of the lawyers participating in this trial to such an extent that an older member of the Bar asked for a conference with the Judge, and in such conference advised him that he was abusing his powers from the bench.
The Commission, after a review of the transcript of the Whisenhunt trial, and after *1080 consideration of the testimony of witnesses adduced during the hearing, finds that the conduct of Judge Turner during the course of said trial constitutes an arrogant, arbitrary and capricious abuse of his powers as a Circuit Judge.

COUNT III
(b) During the course of the instant hearing, considerable testimony and documentation was adduced which reflects a fixation on the part of Judge Turner as to the proper legal method for using depositions or other materials in the impeachment of witnesses. However, in reviewing the transcripts of several trials conducted by Judge Turner, legally trained members of the Commission doubt that the method the attorneys were using was clearly wrong, and in any event Judge Turner failed to effectively explain to the attorneys what he felt they were doing improperly. This fixation on the part of the Judge was fully evidenced during the trial of State v. Cater and Sherrill in which he admonished Attorney Jim Fensom for his lack of professional ability, stating from the bench that Fensom was a master of minutiae, and "... tripping the light fantastic and chasing butterflies," and other derogatory comments. The Judge stated at one point during said trial that he was going to teach attorneys how to impeach a witness even if he had to put every attorney in Bay County in jail.
The Commission finds that the conduct of Judge Turner, by his statements from the bench during the trial of Cater and Sherrill, castigating Attorney Fensom, in the presence of lawyers, spectators and clients, constitutes an arrogant, arbitrary and capricious abuse of his powers as a Circuit Judge.
(e) The transcript of proceedings in the trial of Allen v. Whisenhunt, supra, and testimony of witnesses, discloses that Judge Turner engaged in general tirades directed to Attorney DeDee Costello during the trial, wherein he frequently made such statements from the bench as "... A first-year law student should know better", all in the presence of her client, spectators, and other attorneys. Such conduct demeans the dignity of a judicial proceeding and casts a cloud upon the judicial system. During said trial, the Judge, without provocation, ordered Ms. Costello to remain seated and directed her not to state any grounds for objection. A long-established rule of law is that grounds of an objection must be stated to the trial judge in order to be considered upon appellate review. The simple observation of an attorney, that "I object", will not be considered by an appellate court. By this arbitrary order, the Judge was depriving Attorney Costello and her client of establishing a record that could be successfully appealed. The fact that the jury was unaware of the Judge's order served to exacerbate the situation because in the jury's eyes Ms. Costello may have appeared either incompetent or impolite when in the course of making objections she failed to explain them or even stand up.
The Commission finds that by his actions Judge Turner failed to observe elementary standards of judicial conduct and that his actions impeached the public's confidence in the integrity and impartiality of the Judiciary, and that he failed to accord this lawyer and her client a right to be heard according to law.

CONCLUSIONS
The conduct of Judge Turner as described herein brings the Judiciary into disrepute and this file will remain open and the future conduct of this Judge will be monitored by the Commission. (In re Kelly, 238 So.2d 565, Fla. 1970).
The Commission finds by the necessary vote required by the Constitution of the State of Florida and the Rules of the Florida Judicial Qualifications Commission, that the Respondent Judge is guilty of conduct unbecoming a member of the Judiciary.
The Florida Judicial Qualifications Commission recommends to the Supreme Court of Florida that W. Fred Turner be publicly reprimanded.
[2] Cindy's residence, a house trailer, was located in a sparsely populated area a considerable distance from the nearest neighbor. She *1081 had no telephone and had been threatened physically by her husband. There was also testimony that a witness who testified against her at a custody hearing had physically assaulted her in her home approximately two weeks prior to the Judge's visit.
[3] At the time of the meeting, Ms. Sutton was unaware of the third visit and did not discover it had occurred until she talked to Cindy later in the day.
Earnestly urging that there was no intent to violate any provisions of the judicial code and expressing a sincere effort to abide by the code and properly fulfill his responsibilities as a judicial officer, Judge Turner acknowledges that there is competent substantial evidence to support the commission's findings, except finding II(c). In regard to this charge he suggests that section 914.13, Florida Statutes (1979), authorizes his actions of ordering the two witnesses to be taken into custody. We disagree. That statute does not allow the arrest of two witnesses when testimony is conflicting.[*] To authorize such action would create a chilling effect on any witness disagreeing with another because it could lead to one of them being detained improperly until the state attorney decides to prosecute one of them for perjury. The utilization of section 914.13 must be exercised with care to protect the innocent and only when the judge has a reason to believe the person sought to be detained actually committed perjury.
The actions of Judge Turner occurred early in his judicial career. Before that, Judge Turner had been an aggressive trial lawyer. The transition from a forceful, effective advocate to an impartial, considerate judge is not an easy task and cannot always be accomplished overnight. Nevertheless, all persons becoming judges must be aware of a judge's obligations and strive to fulfill them. The duties, responsibilities, and powers entrusted to judges are awesome. Judges must necessarily have a great deal of independence in executing these powers, but such authority should never be autocratic or abusive. We judges must always be mindful that it is our responsibility to serve the public interest by promoting justice and to avoid, in official conduct, any impropriety or appearance of impropriety. We must administer our offices with due regard to the system of law itself, remembering that we are not depositories of arbitrary power, but judges under the sanction of law. Judges are expected to be temperate, attentive, patient and impartial, diligent in ascertaining facts, and prompt in the performance of a judge's duties. Common courtesy and considerate treatment of jurors, witnesses, court personnel, and lawyers are traits properly expected of judges. Court proceedings and all other judicial acts must be conducted with fitting dignity and decorum, reflecting the importance and seriousness of the inquiry to ascertain the truth.
We regret that Judge Turner deviated from some of these time-honored expectations of judges. He is hereby reprimanded for his conduct. At the same time we are satisfied of his desire to properly fulfill his societal role of a judge and future derelictions are unlikely. We further trust that the publication of this opinion will act as a reminder to all judges that we have been given a unique trust and that pains must be taken to assure that we fulfill that trust.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, McDONALD and EHRLICH, JJ., concur.
ADKINS, J., concurs in result only.
NOTES
[*] Perjury is made a criminal violation by and defined in § 837.02, Fla. Stat. (1979), as:

(1) Whoever makes a false statement, which he does not believe to be true, under oath in an official proceeding in regard to any material matter shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(2) Knowledge of the materiality of the statement is not an element of this crime, and the defendant's mistaken belief that his statement was not material is not a defense.