641 So.2d 366 (1994)
In re INQUIRY CONCERNING a Judge, Daniel W. PERRY.
No. 80457.
Supreme Court of Florida.
June 16, 1994.
Rehearing Denied September 1, 1994.
Joseph J. Reiter, Chairman and Ford L. Thompson, Gen. Counsel, Florida Judicial Qualifications Com'n, Tallahassee, and Patricia Fields Anderson of Rahdert & Anderson, St. Petersburg, Sp. Counsel to the Florida Judicial Qualifications Commission, for petitioner.
Gus R. Benitez of Benitez & Butcher, P.A., Orlando, for respondent.
PER CURIAM.
The Florida Judicial Qualifications Commission (Commission) recommends that this Court discipline Judge Daniel W. Perry *367 through a public reprimand for conduct unbecoming a member of the judiciary. We have jurisdiction. Art. V, § 12, Fla. Const. For the reasons expressed, we approve the Commission's recommendation.
Judge Perry was elected as a County Court Judge in Orange County, Florida, in November 1990 and took office on January 8, 1991. In the latter part of 1992, the Commission charged Judge Perry with ten counts of misconduct.[1] After a formal hearing was conducted before the Commission, three of the charges were dismissed and Judge Perry was found not guilty of five of the charges. The Commission found Judge Perry guilty of the following two remaining charges: (1) that he unnecessarily admonished an army recruiter for appearing in court in his army dress uniform; and (2) that, on at least six occasions, he conducted himself in a manner that indicated a disregard for the sober and proper exercise of his contempt powers.
As to the first charge, the Commission concluded that there was clear and convincing evidence that Judge Perry unnecessarily admonished, abused, and berated the recruiter for wearing his army dress uniform to court. The Commission heard the audiotape of that proceeding and had the opportunity to hear the exact language and tone of voice used by Judge Perry when he admonished the recruiter. Based on that tape and the testimony of the recruiter, the Commission determined that Judge Perry's conduct was rude, abusive, and insulting.
As to the second charge, the Commission concluded that there was clear and convincing evidence that Judge Perry exercised his contempt powers in an arbitrary and improper manner without regard for due process of law. The Commission based its conclusion on the audiotape and court files of each of the six contempt proceedings at issue. From that evidence, the Commission determined that Judge Perry cited the defendants for indirect contempt without complying with the rules and requirements relating to indirect contempt and that the defendants were illegally and wrongfully sentenced to jail, including one who was incarcerated for twenty-six days. The Commission also found that Judge Perry required the defendants to post very high bonds, that he was sarcastic, and that his tone of voice was inappropriate. Judge Perry admitted that he was upset and angry during these contempt proceedings.
On these facts, the Commission concluded that Judge Perry should be found guilty of violating Code of Judicial Conduct Canons 1 (judge should uphold the integrity and independence of the judiciary by observing high standards of conduct); 2 (judges should conduct themselves at all times in a manner that promotes public confidence in the integrity of the judiciary); and 3A(3) ("A judge should be patient, dignified and courteous to litigants... with whom he deals in his official capacity."). Based on these factual findings and conclusions of law, the Commission recommended that Judge Perry be publicly reprimanded by this Court.
Judge Perry argues that the record does not support the findings of the Commission and that his conduct was appropriate under the circumstances. We disagree, finding that the findings of the Commission regarding both charges are supported by the *368 record. The second charge, however, is clearly the more serious of the two charges. The record reflects the following facts regarding that charge. The six defendants whom Judge Perry held in contempt all appeared before him for traffic offenses. The defendants' driver's licenses were either already suspended or were suspended in that proceeding, and it appears that Judge Perry cautioned all of them not to drive because their driver's licenses were suspended. All six defendants had driven to the courthouse and law enforcement officers were waiting outside the courthouse to watch them drive away. The officers followed the defendants, arrested five of them for driving with suspended licenses, and brought them back to the courthouse where Judge Perry was waiting to hold each of the defendants in contempt of court for driving with a suspended license. The sixth defendant eluded officers and was not immediately brought back to court. Judge Perry asked the five defendants to plead guilty, no contest, or not guilty to both the new traffic offense and the contempt charge. Three pleaded guilty and were immediately sentenced to jail. The two defendants who chose to plead not guilty and requested to talk to lawyers, were required to post very high bonds. One defendant's bond was set at $15,000: $10,000 for the traffic offense and $5,000 for the contempt offense. The second defendant's bond was set at $20,000: $10,000 for the traffic offense and $10,000 for the contempt charge. After hearing that his bond would be $15,000, the first of those two defendants changed his plea to guilty and was sentenced to jail. The second was unable to post the $20,000 bond, and, as a result, she was incarcerated for twenty-six days. A warrant was issued for the arrest of the sixth defendant.
In charging each of the defendants with contempt, it is clear from the record that Judge Perry failed to follow the appropriate procedures for indirect criminal contempt, as set forth in Florida Rule of Criminal Procedure 3.840. Additionally, Judge Perry conceded before the Commission that he was angry and upset during these proceedings.
Judge Perry contends his alleged transgressions were nothing more than errors of law. Consequently, he asserts that his actions are outside the jurisdiction of the Commission and should not be subject to disciplinary proceedings. Further, he asserts that the bails he set for both the traffic and contempt offenses were lawful and reasonable. To the contrary, we find that the bails he set in these two instances were arbitrary, unreasonable, and designed to punish the defendants rather than to assure their presence for trial.
In this proceeding, we are addressing Judge Perry's conduct in applying and enforcing the law, and we find, given the record in this case, that this disciplinary proceeding is appropriately before the Commission. In addressing Judge Perry's conduct, we must emphasize that we in no way condone the conduct of the defendants. Further, we fully understand that one of the most important and essential powers of a court is the authority to protect itself against those who disregard its dignity and authority or disobey its orders. This authority is appropriately administered through a court's power to punish by contempt. South Dade Farms, Inc. v. Peters, 88 So.2d 891 (Fla. 1956). Nevertheless, although the power of contempt is an extremely important power for the judiciary, it is also a very awesome power and is one that should never be abused. Further, because trial judges exercise their power of criminal contempt to punish, it is extremely important that they protect an offender's due process rights, particularly when the punishment results in the imprisonment of the offender. As such, it is critical that the exercise of this contempt power never be used by a judge in a fit of anger, in an arbitrary manner, or for the judge's own sense of justice. As we have previously explained:
Judges must necessarily have a great deal of independence in executing [their] powers, but such authority should never be autocratic or abusive. We judges must always be mindful that it is our responsibility to serve the public interest by promoting justice and to avoid, in official conduct, any impropriety or appearance of impropriety. We must administer our offices with due regard to the system of law *369 itself, remembering that we are not depositories of arbitrary power, but judges under the sanction of law. Judges are expected to be temperate, attentive, patient and impartial, diligent in ascertaining facts, and prompt in the performance of a judge's duties. Common courtesy and considerate treatment of [others] are traits properly expected of judges. Court proceedings and all other judicial acts must be conducted with fitting dignity and decorum, reflecting the importance and seriousness of the inquiry to ascertain the truth.
In re Turner, 421 So.2d 1077, 1081 (Fla. 1982). It is also extremely important to recognize that this discretionary power of criminal contempt is not broad or unregulated. Our rules directly speak to how it should be exercised. Justice Cardozo's comments concerning the discretionary power of trial judges seem appropriate in this instance:

The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to "the primordial necessity of order in the social life." Wide enough in all conscience is the field of discretion that remains.
American Judicature Society, Handbook for Judges 82 (1961) (emphasis added) (footnote omitted) (quoting Benjamin N. Cardozo, The Nature of the Judicial Process (1921)).
We note that all judges in Florida receive express educational training on the appropriate procedures for applying their contempt powers. In fact, they are provided with a checklist to follow in holding a defendant in contempt. Because, as here, a defendant found to be in criminal contempt of court can be incarcerated, due process requirements must be followed. Judge Perry's conduct in this instance was improper and beyond any statutory or common law authority. Consequently, under the circumstances of this case, we find that the Commission's recommendation of a public reprimand is appropriate. See In re Eastmoore, 504 So.2d 756 (Fla. 1987); Turner; In re Crowell, 379 So.2d 107 (Fla. 1979).
Accordingly, for the reasons expressed, we approve the findings and recommendation of the Commission. Daniel W. Perry is publicly reprimanded by the publication of this opinion.
It is so ordered.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] The commission charged that: (1) Judge Perry unnecessarily admonished and berated an army recruiter for appearing in court in his army dress uniform; (2) he conducted himself in a manner that indicated a disregard for the sober and proper exercise of his contempt powers without any deference to due process of law on at least six occasions; (3) he conducted himself in a manner as to lessen public confidence in the integrity, competence and impartiality of the judiciary, on at least six occasions; (4) he acted, on numerous occasions, in a discourteous and insulting manner toward litigants, attorneys, and courthouse personnel; (5) while acting as the presiding judge in a case, he directed the prosecutor to call the criminal defendant to the witness stand as a hostile witness during the State's case in chief; (6) he routinely required offenders to testify first at infraction hearings so the police officer could rebut their testimony; (7) he routinely conducted voir dire of potential jurors despite Florida Rules of Criminal Procedure; (8) prosecutors and defense attorneys were hesitant to make vigorous legal argument to him for fear of reaction, such as possibly being held in contempt; (9) he did not reveal to the Commission that he had not dismissed two cases of contempt that he had previously erroneously entered; and (10) he failed to correct an erroneous contempt order after he represented to the Commission that he had corrected all contempt orders, until he was charged with that conduct.