PER CURIAM.
In this case we review the determination by the Judicial Qualifications Commission (JQC) that Seventeenth Judicial Circuit Judge Cheryl Aleman violated the Code of Judicial Conduct and its recommendation that Judge Aleman be publicly reprimanded and charged the costs of investigation and prosecution. For the reasons discussed below, we approve the JQC’s determination and recommendation.
I. FACTS AND PROCEDURAL HISTORY
The charges stem from Judge Ale-man’s behavior in response to three motions to disqualify her made by Assistant Public Defenders Sandra Perlman and Bruce Raticoff on January 24, 2006, the second day of jury selection in State v. Braynen, a first-degree murder case.[1] On the morning of January 24, Perlman sought to disqualify Judge Aleman based on what Perlman perceived to be Judge Aleman’s aggressive and intimidating questioning of prospective jurors during voir dire the previous afternoon. Because the motion was oral, Perlman requested a reasonable amount of time to reduce the motion to writing as required by Rogers v. State, 630 So.2d 513 (Fla.1993).[2] Judge Aleman denied the request for additional time and immediately denied the motion on its merits.
The second motion to disqualify related to Judge Aleman’s allegedly preferential treatment of Assistant State Attorney Peter Holden. Judge Aleman had granted Holden a fifteen-minute delay in the start of the afternoon proceedings while denying a similar request from Perlman. When Perlman requested “at least an hour” to reduce this second oral motion to writing, Judge Aleman responded that the court would be in recess for five minutes. During this time, Judge Aleman conferred with another jurist, who suggested that defense counsel be given a pad of paper and a pen to prepare a written motion. .When the proceeding resumed at 2:20 p.m., Judge Aleman did just that; she gave Perlman paper and pen and stated that, if defense counsel subsequently wished to substitute a typed motion, she would allow it. But rather than giving counsel an hour, Judge Aleman gave the defense attorneys fifteen minutes to tran *397 scribe the motion, stating that the court would adjourn until 2:35 p.m.
Intending to research and type the motion, Perlman and Raticoff left the courtroom to return to their office. In their haste, they ran past a number of prospective jurors who were sitting and standing in the hallway. At 2:42 p.m., when the proceeding reconvened, neither assistant public defender was in the courtroom. Judge Aleman took a recess until defense counsel returned.
By 2:48 p.m., Raticoff had returned, but Perlman had not. At that point, Judge Aleman mentioned the prospect of holding both public defenders in contempt:
The Court: The Court’s go[ing] to issue a rule to show cause, and we’ll hold this in abeyance until conclusion of the trial. The Court had [given] counsel 15 additional minutes to handwrite a motion, provided a paper and pen for counsel to do so, and when the Court returned back neither Defense Counsel was here, and now it’s 2:49 and we’re still missing one of defense counsel.
Again, good grounds for the rule to show cause is failure to abide by the Court’s order with respect, and we’ll hold that in abeyance until the concluding of the proceeding.
Mr. Raticoff: Judge, just so the record—
The Court: Directly to both Counsel, Mr. Raticoff and Ms. Perlman. And we’ll be in recess until Ms. Perlman arrives.
Upon returning to the courtroom at 2:57 p.m., Perlman inquired into the status of the contempt charge. There was some confusion as to whether Judge Aleman actually issued the order to show cause. At first, Judge Aleman suggested that she did not. Upon further inquiry by defense counsel, however, Judge Aleman indicated that she had, in fact, issued the order.
Raticoff then moved to withdraw from the case, citing the conflict between defending his client on one hand and defending himself on the other. In addition, Raticoff expressed his concern that he would not be able to represent Braynen effectively. Judge Aleman denied the motion, finding no reason to believe that the defendant had not received effective assistance of counsel. Judge Aleman eventually denied the second motion to disqualify, finding it legally insufficient.
Judge Aleman’s order to show cause triggered defense counsel’s third motion to disqualify. Again, Perlman requested a reasonable time to reduce the motion to writing, and again Judge Aleman granted fifteen minutes. When Perlman objected, reminding Judge Aleman that fifteen minutes was previously insufficient, Judge Aleman instead granted twelve minutes. Once again, Perlman objected, and Judge Aleman eventually gave defense counsel twenty-two minutes to prepare the written motion.
This time, when the court reconvened, both Public Defenders were present — but the motion was not. Afraid to violate the court’s order, Perlman had returned to the courtroom without finishing the motion and requested an additional five minutes to do so. Judge Aleman expressed her concern for the jurors who had been sitting in the hallway since 1:30 p.m., but agreed. When presented with this third motion, Judge Aleman denied it as well.
The next day, when Raticoff asked Judge Aleman to reconsider or vacate her order to show cause, Judge Aleman declined to hold a hearing on the matter, stating instead that “I believe everyone is entitled to due process.” Ultimately, Judge Aleman never issued a written order to show cause, and the issue of contempt was never acted upon.
*398 Based on these events, an Investigative Panel of the JQC charged Judge Aleman with violating Canons 1, 2A and 3B(4) of the Code of Judicial Conduct. A Hearing Panel of the JQC heard testimony from several witnesses, including Public Defenders Perlman and Raticoff, Assistant State Attorney Holden, and Judge Aleman. The JQC concluded that:
Judge Aleman’s conduct involving her denial of the motions for disqualifications [sic] without giving counsel a reasonable time to prepare the motions in writing and in threatening contempt by announcing entry of an order to show cause and then refusing to vacate the order to show cause constituted conduct which was arrogant, discourteous, and impatient to the lawyers appearing before her and others appearing in the Braynen case.... She acted in a manner that erodes public confidence in the integrity and impartiality of the judiciary.
More specifically, the JQC Hearing Panel found that Judge Aleman “did not give the Public Defender adequate time to prepare [the first] motion in writing before denying it,” “it was ... improper to have the lawyers in the case run up and down in front of the prospective jurors in order to avoid being held in contempt,” “[t]he order to show cause which was never reduced to writing and which was never acted upon caused conflicts and further delays,” the time limits imposed by Judge Aleman were “unreasonable under all of the circumstances,” and “[f]orcing an attorney to prepare a handwritten motion for disqualification of a judge within 15 minutes or within 22 minutes was improper in the context of this first-degree murder case in which the death penalty was being sought.”
As a result, the JQC Hearing Panel found by a two-thirds vote that Judge Aleman was guilty of misconduct and recommended that Judge Aleman be publicly reprimanded and charged the costs of the investigation.
II. ANALYSIS
Judge Aleman disputes the JQC’s findings, arguing: (a) the JQC’s findings are not supported by clear and convincing evidence; and (b) rather than requiring her to pay the costs of the investigation, the JQC should pay her costs because Judge Aleman was the prevailing party.[3] We conclude that each argument lacks merit.
A. Clear and Convincing Evidence
First, Judge Aleman argues that there is no clear and convincing evidence to support the JQC’s conclusion that her conduct was unreasonable or that she threatened the public defenders with contempt. To the contrary, we find that sufficient evidence supports the JQC’s conclusion in both respects.
The Florida Constitution vests this Court with the ultimate decision in determining what constitutes judicial misconduct. Specifically, article V, section 12(c)(1) provides that “[t]he supreme court may accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the [judicial qualifications] commission and it may order that the justice or judge be subjected to appropriate discipline.” In In re Graziano, 696 So.2d 744, 753 (Fla.1997), we described how we review the JQC’s findings of fact:
Before reporting findings of fact to this Court, the JQC must conclude that they are established by clear and convincing *399 evidence. In re McAllister, 646 So.2d 173, 177 (Fla.1994). This Court must then review the findings and determine whether they meet this quantum of proof, a standard which requires more proof than a “preponderance of the evidence” but the less than “beyond and to the exclusion of a reasonable doubt.” In re Davey, 645 So.2d 398, 404 (Fla.1994). If the findings meet this intermediate standard, then they are of persuasive force and are given great weight by this Court. See In re LaMotte, 341 So.2d 513, 516 (Fla.1977). This is so because the JQC is in a position to evaluate the testimony and evidence first-hand. See In re Crowell, 379 So.2d 107 (Fla.1979). However, the ultimate power and responsibility in making a determination rests with this Court. Id.
Furthermore, this Court has “relied upon the clear and convincing evidence standard without distinguishing findings of fact from whether the facts as found warrant particular discipline.” In re Henson, 913 So.2d 579, 589 (Fla.2005) (citing In re Kinsey, 842 So.2d 77, 85 (Fla.2003)).
Based on generally undisputed facts, the JQC concluded that Judge Aleman’s conduct violated Canons 1, 2A, and 3B(4) of the Code of Judicial Conduct.[4] Judge Ale-man admits, and the Braynen transcript reflects, the facts upon which the JQC relied in making its decision.[5] Far from patient, dignified, or courteous, the JQC concluded that Judge Aleman’s undisputed conduct was “arrogant, discourteous, and impatient,” as well as “[injadequate,” “improper,” “unacceptable,” and “unreasonable.”
We find that clear and convincing evidence supports the JQC’s findings of fact as well as its conclusion that Judge Aleman violated Canons 1, 2A, and 3B(4). We agree with the JQC’s conclusion that, with respect to the time limitations, “forcing an attorney to prepare a handwritten motion for disqualification of a judge within 15 minutes or within 22 minutes was improper in the context of this first degree murder case in which the death penalty was being sought.” This is true particularly in light of our decision in Rogers, which entitles counsel to a reasonable amount of time to prepare a written mo *400 tion. By imposing unreasonably strict time limits, Judge Aleman forced defense counsel to decide between diligently representing their client and abiding by the court’s order. Such conduct is improper.
In addition, Judge Aleman’s use or threat to use her contempt power is even more unsettling. A judge’s power of contempt must be exercised with care. This Court has stated that:
[O]ne of the most important and essential powers of a court is the authority to protect itself against those who disregard its dignity and authority or disobey its orders. This authority is appropriately administered through a courts power to punish by contempt. South Dade Farms, Inc. v. Peters, 88 So.2d 891 (Fla.1956). Nevertheless, although the power of contempt is an extremely important power for the judiciary, it is also a very awesome power and is one that should never be abused.
In re Perry, 641 So.2d 366, 368 (Fla. 1994). A judge’s abuse of contempt powers has, on several occasions, resulted in discipline. See id. at 366-68 (reprimanding a judge for holding six defendants in contempt for driving away from courthouse with suspended licenses, for which one defendant spent twenty-six days in jail); see also In re Shea, 759 So.2d 631, 632 (Fla.2000) (imposing discipline for, among other things, entering an order to show cause after a litigant sent a letter to the Governor complaining of Judge Shea’s handling of a support case); In re Wright, 694 So.2d 734, 735 (Fla.1997) (reprimanding a judge for, among other things, threatening a prosecutor by stating “if you talk any more[,] it’s an Order that you don’t open your mouth anymore until I invite you to do so, and if you do I’m gonna hold you in contempt”); In re Muszynski, 471 So.2d 1284, 1285 (Fla.1985) (imposing discipline for demanding a police officer to lower the volume on his police radio while dining in a restaurant and, when the officer refused, directing him to appear in court to explain his “contemptuous conduct”); In re Crowell, 379 So.2d 107, 108 (Fla.1979) (removing a judge for abusing his contempt powers which demonstrated a “propensity to summarily adjudicate and incarcerate a citizen ... without according to the accused a right to be heard or any opportunity to defend himself’).
Here, after Judge Aleman announced her intention to issue an order to show cause, the prospect of defense counsel being held in contempt had a palpable impact on the proceeding. Perlman sought to disqualify Judge Aleman for the fifth time, and Raticoff moved to withdraw, citing the conflict between defending his client and defending himself. Raticoff later testified that the order to show cause had a “chilling effect” on his representation. The fear of being held in contempt, Raticoff recalled, limited his ability to zealously represent his client. In sum, Judge Aleman’s threat of contempt was unnecessary and harmful under the circumstances.
Accordingly, we approve the JQC’s findings of fact and its conclusion that Judge Aleman committed misconduct by imposing unreasonable time limits on counsel and then threatening counsel with contempt.
B. Discipline
Having approved the JQC’s conclusion that Judge Aleman committed misconduct, the final matter is the appropriate discipline. The JQC recommends that we issue a public reprimand of Judge Aleman and require her to pay the costs of the investigation and prosecution. We agree.
Judge Aleman does not challenge the propriety of a public reprimand, and we find it to be a suitable punishment considering the nature of her conduct. We have *401 employed a public reprimand to sanction judges for similar misconduct. See Perry, 641 So.2d at 366-368 (abuse of contempt powers and, to a lesser extent, the admonition of army recruiter for wearing his uniform in court); see also In re Schapiro, 845 So.2d 170 (Fla.2003) (intemperate courtroom behavior); In re Schwartz, 755 So.2d 110 (Fla.2000) (rude remarks during oral argument). And, because the JQC prevailed in the matter of whether Judge Aleman committed misconduct with respect to her actions in Braynen, we likewise order Judge Aleman to pay the cost of the JQC’s investigation and prosecution relating to that charge. See art. V, § 12(c)(2), Fla. Const.
III. CONCLUSION
For the reasons stated, we approve the JQC’s conclusion that Judge Aleman violated the Code of Judicial Conduct, and we approve the JQC’s recommendation that Judge Aleman be reprimanded and charged the cost of the investigation and prosecution relating to her conduct in State v. Braynen. In accordance with the policy announced in In re Frank, 753 So.2d 1228, 1242 (Fla.2000), we hereby command Judge Cheryl Aleman to appear before this Court for the administration of a public reprimand at a time to be established by the Clerk of this Court.
It is so ordered.
QUINCE, C.J., and WELLS, ANSTEAD, PARIENTE, LEWIS, and BELL, JJ., concur.

. Prior to trial, defense counsel filed two motions to disqualify Judge Aleman. Perlman first moved to disqualify Judge Aleman because Ms. Perlman supported Judge Aleman's opponent in the 2004 election. Judge Aleman denied the motion, and the Fourth District affirmed this ruling on appeal. See Braynen v. State, 895 So.2d 1169 (Fla. 4th DCA 2005). The defense then sought review of the Fourth District's decision in this Court and moved to stay the trial proceedings. Judge Aleman denied the motion to stay and instructed Ms. Perlman to prepare an order reflecting this ruling. When Ms. Perlman handed the proposed order to Judge Aleman, Judge Aleman ripped it up and wrote her own. This led to the second motion to disqualify, which Judge Aleman likewise denied. However, these first two motions to disqualify were not the basis for the JQC investigation.

. When a motion to disqualify a judge occurs “mid-trial or mid-hearing,” the trial court must give counsel a "reasonable opportunity” to write and file the motion. Rogers, 630 So.2d at 516.

. Judge Aleman also argues that the JQC does not have jurisdiction over her conduct in Braynen. We disagree. See art. V, § 12(a)(1), Fla. Const.

. Canon 1 provides, in pertinent part, that judges “should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved.” Canon 2A provides that judges shall "respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.” Canon 3B(4) provides that judges shall be "patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, and of staff, court officials, and others subject to the judge’s direction and control.”

. Judge Aleman disputes one aspect of the JQC’s findings: that she threatened contempt by "announcing entry of an order to show cause and then refusing to vacate the order to show cause.” Judge Aleman argues that she never actually entered a written order, but only stated her intention to do so at a later date, and thus there was no order to vacate. Indeed, the JQC's findings are somewhat unclear on this point. In addition to the language quoted above, the JQC, in a section entitled "The Threat of Contempt,” seemed to espouse Judge Aleman’s version of the events, stating: "The basis for the order to show cause which was never reduced to writing, was that the attorneys were late in returning with the written motion which they had been given 15 minutes to prepare.” (emphasis provided). The difference, though, is largely semantic. The thrust of the JQC's finding was that the specter of contempt loomed over the public defenders, and this remained true whether Judge Aleman entered a written order or merely stated an intention to do so.