998 So.2d 557 (2008)
Inquiry Concerning a Judge, No. 06-249 re Michael E. ALLEN.
No. SC07-774.
Supreme Court of Florida.
December 18, 2008.
*558 Judge Morris Silberman, Chair, Judicial Qualifications Commission, Tampa, FL; *559 Michael L. Schneider, General Counsel, Judicial Qualifications Commission, Tallahassee, FL; Marvin E. Barkin, Interim General Counsel, Judicial Qualifications Commission, Tampa, FL; Brooke S. Kennerly, Executive Director, Judicial Qualifications Commission, Tallahassee, FL; Lauri Waldman Ross of Ross and Girten, Miami, FL, Counsel to Judicial Qualifications Commission Hearing Panel; and F. Wallace Pope, Jr., and Jennifer A. Reh of Johnson, Pope, Bokor, Ruppel and Burns, LLP, Clearwater, FL, Special Counsel to Judicial Qualifications Commission, for the Florida Judicial Qualifications Commission.
Bruce S. Rogow and Cynthia E. Gunther of Bruce S. Rogow, P.A., Fort Lauderdale, FL, Sylvia Walbolt of Carlton Fields, P.A., Tampa, FL, Richard C. McFarlain, Tallahassee, FL; and Guy E. Burnette, Jr., Tallahassee, FL, for Judge Michael E. Allen.
PER CURIAM.
We have for review the finding of the Judicial Qualifications Commission (JQC) that First District Court of Appeal Judge Michael Allen violated the Code of Judicial Conduct and its recommendation that Judge Allen be publicly reprimanded. We have jurisdiction. See art. V, § 12, Fla. Const. For the reasons discussed below, we approve the JQC's findings, conclusions, and recommendation.

FACTS AND PROCEDURAL HISTORY
This case arises from formal charges brought by the JQC against Judge Michael Allen. These charges involve Judge Allen's concurring opinion in Childers v. State, 936 So.2d 619 (Fla. 1st DCA 2006). In the Notice of Formal Charges, the JQC accused Judge Allen of being motivated by ill will in writing his concurring opinion and personally attacking First District Court of Appeal Judge Charles Kahn in that opinion. As a result, Judge Allen was charged with violating the preamble and Canons 1, 2 A, 3 B(2), 3 B(4), 3 B(5), and 3 D(1) of the Code of Judicial Conduct, and violating Rule 4-8.2(a) of the Rules of Professional Conduct of The Florida Bar and the Oath of Admission of The Florida Bar.[1] After hearing the testimony of several First District judges and attorneys who knew Judge Allen and reviewing other evidence, the Hearing Panel of the JQC concluded that Judge Allen violated Canons 1, 2 A, and 3 B(5) of the Code of Judicial Conduct and recommended that Judge Allen be publicly reprimanded.
The following facts were determined by the JQC to be established by the evidence. Judge Allen was appointed to the First District in January 1990. Judge Kahn was appointed to the First District in 1991.[2] Judge Allen expressed a strong dislike for Judge Kahn that predated the Childers case. Judge Allen generally never had anything nice to say about Judge Kahn. In fact, when Judge Allen spoke about Judge Kahn with other judges, it was usually in a derogatory manner. Judge Allen also did not respect Judge Kahn and believed that Judge Kahn was not what a judge should be, was corrupt, and did not have the *560 character traits to be chief judge. When it was Judge Kahn's turn to be chief judge in 2004, Judge Allen solicited several judges to run against Judge Kahn for the chief judge position.
W.D. Childers, a former state legislator, was convicted of bribery and unlawful compensation or reward for official behavior, and appealed his conviction to the First District. This case was blindly assigned to a three-judge panel, consisting of Chief Judge Kahn, Judge Ervin, and Judge Van Nortwick. After hearing oral arguments, the three-judge panel voted unanimously to reverse Childers' conviction, and Judge Kahn, as the primary judge on the case, was assigned the responsibility of authoring the opinion. After the proposed unanimous opinion was circulated to all the judges, Judge Allen sought out another judge to talk to Judge Kahn about recusing himself from the case. Judge Kahn told that judge that he saw no reason to recuse himself. However, after further discussion within the Court, a revised two-to-one Childers opinion was circulated to all the judges.
Before the new two-to-one opinion was released, one of the judges prepared an extensive memorandum, urging en banc review, which was circulated to all judges. Subsequently, on February 2, 2006, the First District issued an en banc decision, affirming Childers' conviction by a ten-to-four vote. See Childers v. State, 936 So.2d 585 (Fla. 1st DCA 2006). This decision consisted of nine different opinions, which was the result of a legal dispute among the judges over the district court's decision to proceed en banc. One of the dissenting opinions was authored by Judge Kahn, an opinion in which he expressed his view that the court should not have granted en banc review.[3]
Following the release of the en banc decision, Childers' attorney moved to certify certain questions to this Court. It was in the decision denying Childers' motion for certification that Judge Allen filed his concurring opinion that is at issue in the instant proceeding. See Childers v. State, 936 So.2d 619, 622-29 (Fla. 1st DCA 2006). After Judge Allen circulated this proposed concurrence to the other judges, some of the judges warned Judge Allen not to release the opinion because it was unwise and it would be problematic for him.
At the evidentiary hearing, several judges from the First District testified. One judge said he specifically told Judge Allen that releasing the opinion would affect him more than it would Judge Kahn. Although two judges believed that the opinion was a reasonable explanation of why Judge Allen voted for an en banc consideration and was not a personal attack on Judge Kahn, a majority of the judges believed that the opinion was inappropriate and that it suggested that Judge Kahn was corrupt. Two judges testified that they believed the opinion was also unnecessary because the case was, for all intents and purposes, over by the time Judge Allen wrote his concurring opinion. Another judge testified that he showed Judge Allen a proposed order that was a one sentence per curiam denial of Childers' motion for certification. However, Judge Allen refused to sign the proposed order and said, "It's time for them to get theirs." The judge understood "them" to mean Judge Kahn and Judge Wolf. Another judge believed that the opinion was an abuse of power and that Judge Allen wrote the opinion to "settle a score."
*561 Judge Allen also testified at the final hearing. He testified that if Judge Kahn had recused himself and had not written his dissent on the en banc issue (and if Judge Wolf had not written his dissent) accusing the majority of the court of ignoring the requirements of the law, he would not have published his opinion. He also said he did not believe he attacked Judge Kahn's integrity. With regards to the content of his concurring opinion, he admitted that although he quoted extensively from three newspaper articles, he had no personal knowledge of the facts contained in the articles and that Judge Kahn's name did not appear in any of the articles. He also conceded that he was not familiar with the relationship between Judge Kahn and Childers.
Based on these factual findings, the Hearing Panel of the JQC made numerous conclusions including the following: Judge Allen's concurring opinion clearly implied that Judge Kahn cast a corrupt vote as a payback to friends; the opinion was counter-productive and unnecessary; the opinion was a personal attack on Judge Kahn even though Judge Allen phrased the opinion in the third person; Judge Allen did not pursue proper methods of bringing claims of impropriety to the appropriate authority such as the JQC or law enforcement; Judge Allen acted from a dual motive: (1) a perceived threat to the integrity of the court by criticism, and (2) an extraordinary level of antipathy to Judge Kahn; Judge Allen knew that his opinion would harm Judge Kahn and would impede future endeavors by Judge Kahn, including other judicial opportunities; Judge Allen's opinion brought the court and the judiciary into disrepute; and the opinion did not promote public confidence in the integrity and impartiality of the judiciary. As a result, the JQC Hearing Panel found that Judge Allen was guilty of misconduct and recommended that Judge Allen be publicly reprimanded.

ANALYSIS
Judge Allen now asserts that: (1) the JQC's findings of fact are not supported by clear and convincing evidence; (2) the conclusions of law are unfounded as a matter of fact and law; and (3) a JQC proceeding based on a judge's written opinion violates the principles of judicial independence.

Clear and Convincing Factual Findings
Judge Allen first argues that there is no clear and convincing evidence to support the JQC's findings that his concurring opinion was motivated by his dislike of Judge Kahn, that the opinion was a personal attack on Judge Kahn, and that the opinion suggested that Judge Kahn was corrupt. Upon review of the record, however, we find that sufficient evidence supports the JQC's findings.
The Florida Constitution vests this Court with the ultimate decision in determining what constitutes misconduct and how to punish it. Article V, section 12(c)(1) provides, in pertinent part, that "[t]he supreme court may accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the commission and it may order that the justice or judge be subjected to appropriate discipline." In In re Graziano, 696 So.2d 744, 753 (Fla.1997), we described how we review the JQC's findings of fact:
Before reporting findings of fact to this Court, the JQC must conclude that they are established by clear and convincing evidence. In re McAllister, 646 So.2d 173, 177 (Fla.1994). This Court must then review the findings and determine whether they meet this quantum of proof, a standard which requires more proof than a "preponderance of the evidence" but the less than "beyond and to the exclusion of a reasonable doubt." In *562 re Davey, 645 So.2d 398, 404 (Fla.1994). If the findings meet this intermediate standard, then they are of persuasive force and are given great weight by this Court. See In re LaMotte, 341 So.2d 513, 516 (Fla.1977). This is so because the JQC is in a position to evaluate the testimony and evidence first-hand. See In re Crowell, 379 So.2d 107 (Fla.1979). However, the ultimate power and responsibility in making a determination rests with this Court. Id.

Furthermore, we have "relied upon the clear and convincing evidence standard without distinguishing findings of fact from whether the facts as found warrant particular discipline." In re Henson, 913 So.2d 579, 589 (Fla.2005) (citing In re Kinsey, 842 So.2d 77, 85 (Fla.2003)).
Although there is no direct evidence presented that animus was the motive for Judge Allen's concurring opinion, motive and intent are generally proven through circumstantial evidence. See generally Perreault v. State, 831 So.2d 784, 786 (Fla. 5th DCA 2002); Walton v. State, 780 So.2d 1043 (Fla. 4th DCA 2001) (recognizing that intent is ordinarily established by circumstantial evidence); Grover v. State, 581 So.2d 1379, 1380 (Fla. 4th DCA 1991) ("It is black-letter of course that intent, being a state of mind, is rarely if ever susceptible of direct proof. Almost inevitably, as here, it must be shown solely by circumstantial evidence.") (citing State v. Waters, 436 So.2d 66 (Fla.1983)).
Many of the judges who testified at the final hearing testified that Judge Allen had a genuine dislike for Judge Kahn and did not have respect for Judge Kahn. When it was Judge Kahn's turn to become the chief judge, Judge Allen solicited other judges to run against him in an election instead of continuing the seniority system for determining the chief judge. In soliciting these judges, Judge Allen explained that he did not feel that Judge Kahn was fit to be a chief judge and did not have the proper character traits. Judge Allen even admitted at the final hearing that he does not have a lot of respect for Judge Kahn. Thus, even before the Childers case, it is obvious that Judge Allen harbored ill will towards Judge Kahn.
Judge Allen relies on the fact that none of the judges expressed a belief that the opinion was in violation of the Code to argue that the opinion in fact does not violate the Code. The record reflects that the judges had differing views of the concurring opinion.[4] Some of the district court judges opined that a reasonable reading of the opinion suggested that Judge Kahn was corrupt. Several of the judges testified they believed the opinion was not in violation of the Code, while other judges did not express their views either way. Most of the judges testified that they warned Judge Allen that release of the opinion was unwise and it would hurt him more than it would Judge Kahn. However, we conclude that the views of his fellow judges are not determinative of whether a violation occurred.
Further, at the time the concurring opinion was published, the en banc court had already affirmed Childers' conviction by a vote of ten-to-four. Thus, it was already assured that Judge Kahn would not cast a deciding vote reversing the conviction.
A review of the language of the concurring opinion further demonstrates that *563 Judge Allen was motivated by his animus towards Judge Kahn and, based on this animus, he personally attacked Judge Kahn and accused Judge Kahn of corruption. In his concurring opinion, Judge Allen inserted three old newspaper articles that explained a connection between Childers, Fred Levin, and Governor Lawton Chiles. He brought Judge Kahn into the picture based on Judge Kahn's prior relationship with Fred Levin in the practice of law. Judge Allen then creatively suggested corruption on the part of Judge Kahn by stating, in the third person, the possibilities of bias in the negative. Judge Allen wrote:
During his tenure as governor, Lawton Chiles appointed nine judges to this court. The very first of these appointments went to Fred Levin's 39 year-old law partner, Charles Kahn. It is certainly possible that neither Judge Kahn's senior law partner, Mr. Levin, nor Mr. Levin's well-placed friend, Senator Childers, exercised their reputed considerable influence with their friend, Governor Chiles, in seeking Judge Kahn's appointment to this court. It is even possible that Judge Kahn's relationship with the governor's friend, Mr. Levin, had nothing to do with the governor's decision to appoint Judge Kahn. But a member of the public familiar with the reported relationships between these persons, and also familiar with the realities of the political process, would not be considered unduly cynical to doubt these possibilities.
....
Less suspicious members of the public familiar with the information contained in the articles quoted above and also familiar with Judge Kahn's former association with Mr. Levin and his firm would have found it inappropriate for Judge Kahn to have participated in the case. And more suspicious members of the public would have assumed that Judge Kahn had simply returned past favors provided to him by Mr. Levin and Mr. Childers, thus allowing them, once again, to "snooker the bastards."
Childers, 936 So.2d at 627-28. At the final hearing, Judge Allen admitted that he did not have personal knowledge of the facts of the newspaper articles that were included in his opinion, that those articles did not mention Judge Kahn's name, and that he was not familiar with any relationship between Childers and Judge Kahn. Judge Allen failed to mention in his opinion that Judge Kahn was appointed to the district court in 1991, well before Childers, Fred Levin, and Governor Chiles were involved in the tobacco litigation. Judge Allen also did not mention that the Levin law firm did not represent Childers in his case. Judge Allen instead merely assumed that because Fred Levin, Childers, and Governor Chiles had professional relations and Judge Kahn had worked with Fred Levin before 1991, that Judge Kahn may have paid Levin back for past favors with his vote in Childers.
In essence, Judge Allen accused a fellow appellate judge of judicial corruption based on unverified facts that came from outside the record and were not a part of the Childers case. Although Judge Allen asserts that he wrote the opinion to simply explain why he voted in favor of an en banc consideration, we find that Judge Allen went beyond this explanation and launched an unnecessary personal attack on Judge Kahn based upon his dislike for him. Judge Allen may not have been solely motivated by his dislike for Judge Kahn, but it is obvious from the language of the opinion that his animus towards Judge Kahn played a significant part in his decision to write the opinion.
*564 Accordingly, we approve the JQC's findings of fact that in writing the concurring opinion, Judge Allen was motivated by his dislike for Judge Kahn, that Judge Allen personally attacked Judge Kahn in his concurring opinion, and that Judge Allen suggested that Judge Kahn cast a corrupt vote in the Childers case.

Conclusions of Law
Judge Allen next argues that the JQC's conclusion that Judge Allen committed misconduct and violated Canons 1, 2 A, and 3 B(5) of the Code of Judicial Conduct[5] are unfounded as a matter of fact and law. We disagree.
Like the JQC, we conclude that Judge Allen violated Canon 1 by using his opinion-writing power not only to personally attack another appellate judge of the same court, but also to accuse that judge of judicial corruption based on unverified facts that were outside of the record. By engaging in such action, Judge Allen did not observe a high standard of conduct required of a judge so as to preserve the integrity of the court or the judiciary as a whole. Judge Allen also violated Canon 2 A by failing to act in a manner promoting public confidence in the judiciary. The commentary under Canon 2 A states that actions and conduct by judges that are harmful are prohibited under the provision. Judge Allen's action of writing and releasing his concurring opinion was not only harmful to Judge Kahn because it accused him of corruption based on unverified facts, but it was also harmful to the integrity of the First District. The proliferation of newspaper articles and public commentary statewide after the publication of the Childers opinion was a clear indication that the opinion did not "promote public confidence" in the judiciary but instead had the opposite effect. Finally, by not writing a reasonable explanation of why he voted for an en banc consideration and, instead, using his power of the pen to personally attack another appellate judge, Judge Allen violated Canon 3 B(5). By writing and publishing this opinion, Judge Allen created an impression that he would have difficulty performing his judicial duties fairly and without bias.
Accordingly, we approve the JQC's conclusion that Judge Allen committed misconduct by personally attacking another appellate judge based on unverified facts that were not in the record of the Childers case and, as a result, violated Canons 1, 2 A, and 3 B(5) of the Code of Judicial Conduct.

Judicial Independence
Judge Allen contends that the doctrine of judicial independence precluded *565 the JQC from filing charges against him for his concurring opinion. Judge Allen argues that to question by threat of sanction the reason for, the wisdom of, or the motive behind a decision constitutes a gross intrusion into judicial independence and will have a chilling effect on judges carrying out their duties.
While judicial independence is critical to the functioning of the judiciary, it is not unlimited. In In re Turner, 421 So.2d 1077 (Fla.1982), we placed a judge's independence into context:
The duties, responsibilities, and powers entrusted to judges are awesome. Judges must necessarily have a great deal of independence in executing [their] powers, but such authority should never be autocratic or abusive. We judges must always be mindful that it is our responsibility to serve the public interest by promoting justice and to avoid, in official conduct, any impropriety or appearance of impropriety. We must administer our offices with due regard to the system of law itself, remembering that we are not depositories of arbitrary power, but judges under the sanction of law. Judges are expected to be temperate, attentive, patient and impartial, diligent in ascertaining facts, and prompt in the performance of a judge's duties.
Id. at 1081.
Generally, appellate judges are free to write almost anything in their opinions regarding the decision of the case or the facts and law involved in the case. However, the discussion must be germane to the case at bar and the facts that are within the record of the case. In the instant proceeding, Judge Allen did not confine his opinion to the facts that were within the record of the Childers case; instead he used extrarecord materials to personally attack Judge Kahn's decision to not recuse himself from the case and to accuse Judge Kahn of corruption. In addition, he failed to include vital facts that could have put doubt on Judge Allen's assumption that Judge Kahn had cast a corrupt vote. This type of action in a judicial opinion cannot be condoned, nor can it be protected by judicial independence. An appellate judge cannot use his opinion-writing power to inappropriately personally attack another appellate judge by accusing him of a crime.[6]
While we find that the doctrine of judicial independence did not preclude the JQC from filing charges against Judge Allen for writing and releasing his concurring opinion in this case, we caution that our opinion today should not be viewed as a license for the JQC to judge and evaluate judicial opinions. Often judges use intemperate or colorful language in their evaluation of a fellow judge's opinion or reasoning. The choice of language used in such instances may not be subject to scrutiny. However, Judge Allen's opinion was not one of intemperate or colorful language but crossed that line by falsely accusing Judge Kahn of corruption and using unverified statements from materials outside of the record of the case.

Discipline
Having approved the JQC's conclusion that Judge Allen committed misconduct, the final matter is the appropriate discipline. The JQC recommends that we issue a public reprimand to Judge Allen. We agree.
*566 Judge Allen does not challenge the propriety of a public reprimand and we find it to be an appropriate punishment considering the nature of his conduct. Although this type of conduct is one of first impression for this Court, we have imposed public reprimands for judges who have criticized or made improper statements towards other judges, attorneys, and other persons who came before the court. See In re Schwartz, 755 So.2d 110 (Fla.2000) (involving judge who made rude and discourteous remarks during oral argument); In re Marko, 595 So.2d 46 (Fla.1992) (involving judge who made improper and inappropriate remarks during dissolution of marriage hearing); In re Carr, 593 So.2d 1044 (Fla. 1992) (involving judge who made rude and improper remarks regarding ethnicity during a court hearing). Accordingly, we accept the JQC's recommendation of a public reprimand.

CONCLUSION
For the reasons stated, we approve the JQC's findings of fact and its conclusion that Judge Allen violated the Code of Judicial Conduct. We also approve the JQC's recommendation that Judge Allen be publicly reprimanded. In accordance with the policy announced in In re Frank, 753 So.2d 1228, 1242 (Fla.2000), we hereby command Judge Michael Allen to appear before this Court for the administration of a public reprimand at a time to be established by the Clerk of this Court.
It is so ordered.
QUINCE, C.J., and WELLS, ANSTEAD, PARIENTE, and LEWIS, JJ., concur.
CANADY and POLSTON, JJ., recused.
NOTES
[1] The JQC later filed an Amended Notice of Formal Charges, adding the charge that Judge Allen knowingly made false statements during an Investigative Panel hearing. However, the JQC found Judge Allen not guilty of this charge due to insufficient evidence to support the charge.
[2] Prior to joining the First District, Judge Kahn was an attorney in private practice with the law firm of attorney Fred Levin. After joining the First District, Judge Kahn routinely recused himself on appeals handled by the Levin law firm.
[3] Judges Ervin, Webster, and Wolf also wrote separate opinions dissenting to an en banc review of the case.
[4] If a judge believes that another judge's conduct is in violation of the Code of Judicial Conduct, the proper course for the judge is to report what the judge knows to the JQC, or if a judge believes that another judge has violated criminal law, the proper course is to report what the judge knows to the State Attorney.
[5] Canon 1 provides:

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved. The provisions of the Code should be construed and applied to further that objective.
Canon 2 A provides:
A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
Canon 3 B(5) provides:
A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status, and shall not permit staff, court officials, and others subject to the judge's direction and control to do so. This section does not preclude the consideration of race, sex, religion, national origin, disability, age, sexual orientation, socioeconomic status, or other similar factors when they are issues in the proceeding.
[6] To support his argument that an appellate judge cannot be sanctioned for writing an opinion, Judge Allen cites to the Montana Supreme Court's decision in State ex rel. Shea v. Judicial Standards Commission, 198 Mont. 15, 643 P.2d 210 (1982). However, Judge Allen's reliance on his case is misplaced because Shea did not personally attack another justice in his opinion nor did he write the opinion out of animus for another justice. Rather, the opinion used intemperate language towards the majority's decision.